## McGillin v. Claflin et al.

(Circuit Court, N. D. Ohio, E. D. December 3, 1892.)

No. 5,012.

1. **Removal of Causes—Special Appearance in State Court—Effect of Removal.**
A nonresident defendant, who files in the state court a special appearance, for the purpose of objecting to the jurisdiction, and subsequently removes the cause to a federal court, expressly disclaiming in his petition for removal any purpose to enter a general appearance, does not by such removal waive the jurisdictional question, but may renew the same, and have it determined by the federal court.

2. **Appearance—Special and General.**
In an action commenced in an Ohio court by attachment and garnishment proceedings, supplemented by publication of service, defendants, being nonresidents, entered a special appearance, as follows: "And now come the defendants, [naming them,] for the purpose of this motion only, and disclaiming any and all intention of entering an appearance to this action except for the purpose of this motion, and move the court for an order dismissing this action, quashing the process of garnishment herein and the service of notice upon them by publication, for the reason that this court has acquired no jurisdiction in this action of either the persons or the property of these defendants, or either of them, none of them having been served with summons herein, and no property belonging to them, or either of them, having been seized upon such order of attachment, and none of the garnishees named therein, or served therewith, having property of these defendants, or either of them, in their possession or under their control, or being indebted to these defendants, or either of them, in any way, and these defendants being nonresidents of and absent from said state; and also move the quashing of said process of garnishment upon the further ground that the affidavit of the plaintiff filed herein was not sufficient to authorize the issuing of said process." Held, that this motion was not broader than that contemplated by the Ohio statute, and did not operate as a general appearance. Smith v. Hoover, 39 Ohio St. 249, followed.

3. **Service by Publication—Res to Support.**
In an action in an Ohio court against a nonresident, commenced by the issuance of attachment and garnishment process, and supplemented by publication of service, the sheriff's return on the summons and garnishment showed that neither defendant nor any of his property had been found in the county. Each of the garnishees answered that he had no property or credits belonging to defendant, and these answers were not controverted by plaintiff, as allowed by the Ohio law, though sufficient time had elapsed for him to do so. Held that, as the case stood, there being no personal service and no res to support the publication, defendant was entitled to a dismissal of the cause, on special appearance and motion therefor.

At Law. On motion to quash service and dismiss the action.

J. M. Jones and Foran & Dawley, for plaintiff.

Henderson, Kline & Tolles, for defendants.

Ricks, District Judge. This suit was instituted against the defendants in the court of common pleas of Cuyahoga county, Ohio, to recover the sum of $2,093,000, upon nine different causes of action, set forth in the plaintiff's petition. The controversy between the parties involves a large number of transactions growing out of the sale of dry goods, investment in cattle ranches, real estate, notes, accounts, and other choses in action. The suit was instituted in the state court on the 31st of March, 1892, by the filing of the petition and an affidavit for attachment. Summons for the defendants was issued on the same day. On the 11th of April, 1892, the summons was returned by the sheriff, "Defendants not found in my county." On April 11th the sheriff returned the order of attachment, showing service and order to answer as such garnishee in the form provided by law made upon each of the insurance

v.52f.no.8—42

companies named in the exhibit to the plaintiff's affidavit for attachment, and further returns that "defendants had no goods and chattels, lands, and tenements belonging to them, found in my county." On the 8th of June, 1892, an affidavit for publication was filed by the plaintiff, setting forth the nonresidence of the defendants, that an order of attachment and garnishment had been issued and levied upon the property of the defendants, and that their creditors had been garnished. On the 11th of June, 1892, the record certifies that copies of the paper containing such publication were mailed to the defendants at their post office address in the state of New York. On the 11th of June, 1892, the Cleveland Dry Goods Company filed its answer, denying any indebtedness of any kind to the defendants, or that it had any property of any kind under its control belonging to the defendants. On the 12th of July, 1892, the answer of some 48 fire insurance companies, as garnishees, was filed, in which, after protesting against the right to serve the several agents of the garnished parties with process by garnishment, they proceed, and deny, each for itself, that it has any property of the defendants in its custody, or was at any time before or since the plaintiff's suit was filed in any way indebted to any of the defendants, sets forth that each had policies of insurance on the stock of a certain firm of the E. M. McGillin Dry Goods Company, and, without conceding any liability on such policies, avers that such liability is now in dispute, that no notice of any assignment or a transfer of any interest in said goods so insured was ever made to defendants, and therefore denies all indebtedness to them, or either of them. On the 12th of July, 1892, the E. M. McGillin Dry Goods Company filed its answer, denying all indebtedness or liability to the defendants, or either of them. On the 26th of July, 1892, proof of publication was filed, in which the defendants were notified to appear and answer plaintiff's petition in said court on the 6th day of August, 1892. On August 1, 1892, the Guardian Assurance Company, of England, filed its motion to quash the service by garnishment. On August 4, 1892, the defendants entered the following special appearance:

"And now come the defendants, John Claflin, Ed. E. Eames, Daniel Robinson, Horace J. Fairchild, and Dexter N. Force, for the purpose of this motion only, and disclaiming any and all intention of entering an appearance to this action, except for the purpose of this motion, and move the court for an order dismissing this action, quashing the process of garnishment herein and the service of notice upon them by publication, for the reason that this court has acquired no jurisdiction in this action of either the persons or the property of these defendants, or either of them, none of them having been served with summons herein, and no property belonging to them, or either of them, having been seized upon such order of attachment, and none of the garnishees named therein, or served therewith, having property of these defendants, or either of them, in their possession or under their control, or being indebted to these defendants, or either of them, in any way, and these defendants being nonresidents of and absent from said state; and also move the quashing of said process of garnishment upon the further ground that the affidavit of the plaintiff filed herein was not sufficient to authorize the issuing of said process."

On the 5th of August, 1892, the defendants filed their petition for the removal of said suit to this court, and in such petition referred to the pendency of the motion to dismiss for want of proper service; and, disclaiming any intention of entering an appearance to the action generally, the petition was filed. The defendants, having filed their transcript in this court, now renew the motion filed in the state court to quash the service in this case and dismiss the action.

This motion presents a question as to which there has been great diversity of opinion in the reported cases from the various circuit courts of the United States. The defendants, having entered their appearance in the state court for the sole purpose of moving to dismiss the pending proceedings and to quash the process of garnishment, and for no other purpose, and having so filed their motion, afterwards presented their petition for the removal of the suit to this court, and in said petition again disclaimed any intention thereby to enter an appearance in the case, reciting in said petition the nature of the motion to the jurisdiction pending, thereupon tendered their bond, and asked for an order to remove the case to the federal court.

It is now contended by the plaintiff that, notwithstanding all these precautions and disclaimers, the defendants, by filing their petition for the removal of the controversy from the state court, thereby entered a general appearance in said court, and waived all right to controvert in this court the question as to whether or not they were properly and legally in the state court by the garnishment process and publication thereon. As before stated, there is great conflict in the decisions of the federal courts on this question, and, in view of this conflict in the various circuits, it may perhaps be instructive and of value to note the principal decisions made upon this question.

In the case of *Atchison* v. *Morris*, 11 Fed. Rep. 582, the motion to set aside the service of summons made by an officer of the state court was first entered in the United States circuit court for the northern district of Illinois, after the case had been removed to that court. The defendant had been attending the United States court at Chicago as a witness, under service of process, and while so attending was served with summons issued out of the superior court of Cook county. He filed his petition for removal, and, upon docketing the case in the United States court, moved to set aside the service. Judge DRUMMOND held that by such removal the defendant did not enter "such an appearance as to deprive him of the right to make objection in this court to the service of summons."

In the case of *Small* v. *Montgomery*, 17 Fed. Rep. 865, the conditions were similar to those above cited. The defendant resided in Tennessee, and was under indictment in a Missouri court, and while there, under process of such court, was served with process from the St. Louis circuit court. He filed his petition for removal, and entered his special appearance for that purpose. After the removal the defendant filed a plea in abatement, setting forth the facts of service as above stated, and raising the question of the sufficiency of the service for the first time in

the United States court. The case was dismissed, the service having been held to be insufficient by Judge TREAT, Circuit Judge McCRARY concurring.

The case of *Miner* v. *Markham,* in the eastern district of Wisconsin, reported in 28 Fed. Rep. 387, presents substantially the same questions as both the above cases cited. A member of congress was served with process while on his way to attend a session of congress. A motion to set aside the service was entered after the special appearance in the state court. Motion denied in the state court without prejudice to his right to renew the same in the United States court. Judge DYER held that filing petition for removal and bond did not waive the privilege of contesting service in the federal court. The case was dismissed.

In the case of *Perkins* v. *Hendryx,* in the district of Massachusetts, 40 Fed. Rep. 657, the suit was brought in the state court, and service by attachment and publication made. No personal service had. Suit removed, and motion to dismiss for want of jurisdiction first made in the United States court, and sustained by Judge COLT; the opinion of Judge DRUMMOND in *Atchison* v. *Morris* approved and followed.

In the case of *Golden* v. *Morning News of New Haven,* 42 Fed. Rep. 112, the motion to vacate service on the president of the defendant corporation, served while temporarily in New York on business, but when the corporation had no office or place of business in said district, first made in the United States court, was sustained by Judge LACOMBE.

In the case of *Bentlif* v. *Finance Corp.,* 44 Fed. Rep. 667, motion to dismiss, because the state court had no jurisdiction, filed and presented, after removal, in United States circuit court, Judge WALLACE held that the state court did not acquire jurisdiction, and could not have rendered a judgment that would have had any validity. The suit was dismissed.

In the case of *Ahlhauser* v. *Butler,* 50 Fed. Rep. 705, motion to dismiss was made in the United States court after the case was removed, based on the ground that the state court was without jurisdiction of the cause for the want of personal service of process, and of a *res* to support service by publication. The motion was denied, but the court held that the filing of the petition to remove was not a waiver of a right to contest this jurisdictional question.

These are the principal cases relied upon to sustain the motion in this case. In this circuit the senior circuit judge, in the case of *New York Const. Co.* v. *Simon,* pending at Toledo, in the western division of this district, filed his opinion upon this question, which is as follows:

"The settled rule of this circuit is that a defendant who removes a suit from the state court to the circuit court of the United States will not be heard in this court to question the fact that he was properly before the state court when such removal was effected. The right of removal involves, by necessary implication, the assumption that there is a valid and subsisting suit pending in the state court against the removing parties. It is only the controversy involved in such state suit that is intended to be removed. There is nothing in the removal section of the acts of 1887, 1888, or of previous acts, to warrant the idea that a defendant could remove a cause from the state court

to the circuit court of the United States in order merely to have the latter court pass upon and determine the question whether such defendant was properly before the state court. If the defendant does not raise the question in the state court as to whether he has been properly served or is properly before such court before presenting his application and obtaining a removal of such suit to the United States circuit court, he should, it seems to us, be deemed to have waived or abandoned such objection. The federal statutes do not make the question of the validity or invalidity of the service under which a defendant is ·brought before the state court any ground for removing a suit. The right of removal depends upon the existence of an actual pending suit, which may determine the matter of controversy involved in the litigation between the plaintiff and the removing defendant. The removing party is required to state in·his petition the pendency of the suit, the diverse citizenship of the parties at the commencement of the suit and at the date of application for removal, the controversy, and the amount involved, etc. If, after effecting the removal of the suit, with the controversy or controversies· it involves, the defendant may then successfully, in this court, impeach the validity of the service under which he was brought into the state court, and thereby cause the suit to be dismissed as to him, it will result that the jurisdiction of the court which he has voluntarily invoked to hear and determine the matter of controversy between the plaintiff and himself will be defeated.· Having, of his own motion, transferred the suit to this court, the defendant should not be heard here to say that he was not properly brought into the state court, and that the suit against him should therefore be dismissed from the circuit court to which he had it removed for trial upon its merits. With great deference for the opinion of Judge WALLACE, who in the case of *Bentlif* ·v. *Finance Corp.*, reported· in 44 Fed. Rep. 667, held that a removing defendant had the right in the circuit court to move to quash the service under which he was ·brought before the state court from which the suit was removed, this court is of the opinion that the contrary rule, as laid down and enforced in this circuit, presents the sound view on this question, and should be adhered to."

In the case above decided the Chase National Bank did not file the motion to quash the service of summons until after the case had been removed to the federal court, and·the motion would then have been after the rule day for appearance in·the state court; so that in holding that the defendant in that case had waived his right to test this question of jurisdiction by thus failing to file his motion in the state court before asking for its removal to this court, the learned circuit judge did not establish a precedent in this circuit which will preclude nonresident defendants from still having the right to have this important and oftentimes vital question passed upon in this court, when the proper motions are filed in the state court before removal. In this case, when the petition for removal was filed, as heretofore stated, the issue was distinctly made, and the controversy then pending was as to the jurisdiction of the court over the defendants. The summons issued in the case had been returned by the sheriff, showing that the defendants were not found in his county. No personal service of the process had been made, and no further writ to secure such service was issued. The return of the sheriff on the writ of attachment showed no property found, and the answers of the garnishees showed no credits to the defendants, as before recited. Notwithstanding this return of the sheriff and these answers of the garnishees, affida-

vit for publication was filed, and such publication was made, requiring the defendants to appear on the 6th day of August, 1892. On the 4th day of August the special appearance of the defendants was entered, as before stated, and on the 5th the petition for removal was filed, as aforesaid. After the transcript was filed in this court, the defendants presented affidavits in support of the pending motion that they were residents of the state of New York; that they were not partners, but were members of a corporation organized June 4, 1890; that they had examined the list of defendants served with garnishee process; and the defendant John Claflin avers in his affidavit that neither of said defendants had, at the time of the institution of said suit, or at any time thereafter, in their possession or under their control, any property, rights, credits, or property rights of any nature belonging to H. B. Claflin & Co.

The controversy, therefore, as removed to this court by these proceedings, is primarily one of jurisdiction. It is not as to the mere regularity of service upon the parties within the proper jurisdiction of the court, but it relates to the sufficiency of the proceedings by which it is claimed nonresidents of the state were brought into that court. The controversy is one the defendants ought to have the right to make in this court. Our opinion upon this question is as important to them as our opinion upon the merits of the case would be. Having distinctly made the issue, by proper motion in the state court, within the time prescribed by the laws of Ohio, and having distinctly disclaimed any purpose or intent to waive that question by filing their petition for removal, upon what just principle can it be said that these defendants are now foreclosed from invoking our decision upon this very vital and primary question? The exemption from service of process in this state in the manner attempted in this case is a privilege and right of the highest order and greatest value to these defendants, and one which they ought to have the right to have passed upon by this court. The amount in controversy and the nature of the issues to be joined make this a case peculiarly subject to be affected by those local influences and prejudices against which it is manifestly the intent and purport of all removal acts to protect nonresident defendants. The question of proper service of process and jurisdiction is as much subject to such influences as any other. Why, then, deny to a nonresident defendant the right to controvert such questions in the federal court, and put him at once to issue upon the merits? Is there anything in the acts of congress to support such a claim?

The judiciary act of 1789, par. 12, provides that the defendant shall, "at the time of entering his appearance in such state court, file a petition for the removal of the cause for trial into the next circuit court," etc. The decision of the supreme court in the case of *Bushnell* v. *Kennedy*, 9 Wall. 387, was made under this act of 1789, which seemed to require an entry of appearance in the state court contemporaneous with the filing of the petition for removal. This provision is exceptional, and is found alone in this act. The act of July 27, 1866, (14 St. at Large, p. 306,) provides that nonresident defendants "may at any

time before the trial or final hearing of the cause file a petition for the removal of the cause," etc. The act of March 2, 1867, (14 St. at Large, p. 558,) after providing for a removal by either plaintiff or defendant, if a nonresident, upon filing affidavit as to local prejudice, further provides that such nonresident may, "at any time before the final hearing or trial of the suit, file a petition in such state court for the removal," etc. The act of March 3, 1875, (18 St. at Large, p. 470,) provides that the party entitled to a removal under said act "may make and file a petition in such suit in such state court before or at the time at which said cause can be first tried, and before the trial thereof, for the removal of such suit," etc. The act of August 13, 1888, amending and making intelligible the act of March, 1887, (see 25 St. at Large, p. 434,) provides that the party entitled to removal "may make and file a petition in such state court at the time or any time before the defendant is required by the laws of the state, or the rule of the state court in which suit is brought, to answer or plead."

The language of the chief justice, therefore, in the case cited in 10 Wall., though not pertinent to the question decided or before the court for consideration, would seem to be based upon a construction of the act which required the removing defendant to enter his appearance in the state court before or contemporaneously with the filing of his petition for removal. Such appearance might, without a strained construction, be held to be a waiver of the insufficiency of, or irregularity in, the service of process, and to preclude the removing party from such contention thereafter. But it is significant that all the subsequent acts relating to this subject do not require the entry of appearance by the removing party either before or at the time of filing his petition for removal. The acts differ as to the time when such petition shall be filed, but none of them contain the provision of the act of 1789, above stated. It may be suggested that this language refers only to the time when the petition for removal should be filed. It may bear that construction, but the more natural and reasonable reading of the words is that an appearance is to be entered. It does not say "at the time for entering his appearance," or "at the time fixed for entering his appearance," but says "at the time of entering his appearance." The wording is certainly quite different from that used in all the other acts, and the construction evidently given to it is such as I have stated, and seemed to contemplate such an act by the petitioner. It is fair, therefore, to infer that by such omission in subsequent acts the congress did not intend the filing of a petition for removal to act as a general appearance, and to preclude the removing party from the right to invoke the opinion of the federal court upon all questions involved in his controversy so removed. The petition for removal, then, under all these subsequent acts, brought the controversy, as it existed at the time the petition was filed, to the federal court.

Is it fair to say that the application for removal assumes that a valid and subsisting suit is pending in the state court against the removing party? The petition recites that a controversy exists between citizens

of different states.   A controversy as to what?   Why not a controversy
as to the jurisdiction, when that is a substantial and well-founded sub-
ject for contention?   It would be manifestly unjust to deny to the re-
moving party the privilege to contest jurisdictional questions in the
federal court for the reason, as frequently given, that such questions
ought to have been disposed of in the state court before the order for
removal was made.   The removing party cannot delay the removal of
the cause to await such action by the state court.   He may file the
proper motions to present such questions, and should do so before the
time prescribed for filing his petition for removal has elapsed, but if the
state court, for any reason, does not dispose of such motions before the
statutory time for filing the petition for removal, the fault is not that
of the removing party.   The petition for removal must be filed at the
time fixed.   To delay such proceeding is to lose the right to remove,
and therefore the removing defendant cannot be held responsible for
the failure of the state court to pass upon the motions filed.   The time
prescribed by the statute is short, and in the usual course of business
in the state courts such motions are not heard before the time for filing
the petition for removal is reached, and are therefore not disposed of
when the prayer for removal is made, and when, by the laws, all fur-
ther proceedings in that court are suspended.   To foreclose such defend-
ant from those questions in the federal courts for such reasons would
therefore be manifestly unjust.

But it is urged that, if such questions are reserved for controversy in
the federal court after removal, it will often result in hardships, because
the jurisdiction of the state court might be defeated for mere irregularity
of service, which could have been cured in the state court by an amend-
ment of the officer's return on the process, or by amendment in the
writ.   Such cases frequently arise in this district, where some 40 or
more law cases, removed from the state courts, are now pending, and it
has been a source of considerable perplexity to me to know how to pass
upon them.   But in almost every case of this kind the defective service
has been the result of carelessness or ignorance in the return made on
the process by the sheriff, and such defect should have been promptly
detected by a diligent attorney for the plaintiff, and cured by prompt
attention on his part, before any petition for removal was filed.   With
proper diligence on the part of plaintiff's attorneys, all such questions
can and should be eliminated in the state court before the removal is
effected, and, if negligence or ignorance of such attorneys leaves such
privileges and rights undisposed of, the removing defendants are not re-
sponsible for delays that may result; for in most cases the only hard-
ship imposed by disposing of such questions in the federal courts is to
dismiss the suits without prejudice to the right of the plaintiff to begin
a new action in the state court, and obviate the defects fatal in the dis-
missed case.

But the principle involved is too important to removing defendants
to have it adversely decided upon the ground of any hardship to the
plaintiff of the character just considered.   They can be obviated, as

suggested; but to preclude the defendants from invoking the judgment of the federal courts upon the jurisdictional question is to deny them a right and privilege which is the foundation and corner stone of just and legal defenses. When, by proper action, they have presented this contention in the state court, and for reasons for which they are in no way responsible the contention has not been decided, and they remove the controversy to the federal court, they bring this primary and vital question into that court for its decision. When the contention goes to the jurisdiction of the court over the defendants, as nonresidents, the federal court can pass upon it with all the aids and authority of the state court. If the jurisdiction must fail for want of proper service, either personal or constructive, there is no greater hardship to the plaintiff to have such question decided in the federal courts than in the state courts. It is the defendants' right and privilege to have that contention decided here, and to deny it to them because they had removed their case is to deprive them in both tribunals of a decision of this vital question; for, if they must dispose of their contention in the state tribunal, they will, in the usual course of litigation, lose their right of removal, and, if their removal of the cause is a waiver of jurisdictional questions, they are foreclosed on that subject in the federal court, so that they are denied in both courts their right to contest the jurisdiction, and must try on the merits alone in the federal court, or submit their whole controversy to the state tribunals in case they hold adversely to them on the jurisdictional question. This is a denial to nonresidents of a great privilege and right, for the federal courts were principally organized for the protection of nonresident litigants. In the case of *Gordon* v. *Longest*, 16 Pet. 97, the supreme court of the United States said: " One great object in the establishment of the courts of the United States, and regulating their jurisdiction, was to have a tribunal in each state presumed to be free from local influence, and to which all who were nonresidents or aliens might resort for legal redress."

Briefly, then, what is the effect of a decision that a nonresident defendant waives all right to contest the jurisdiction of a state court by exercising his right to remove a controversy pending therein? Fairly stated, it is this: A suit is pending against him in a state court in which proceedings have been taken to enforce his personal appearance by attachment and publication, which proceedings are defective and void, and which suit by law he has a right to remove to the federal court. He is advised and believes that such service is defective, but, in order to avail himself of the right to remove said controversy to the federal court for trial upon its merits, he must waive the jurisdictional question, and relinquish all contention as to his exemption from suit by such proceedings. This is certainly imposing harsh conditions upon nonresidents as the price for exercising a long-conceded right and privilege. But it may be said in reply that if such nonresident defendant is satisfied the proceedings by which constructive service upon him has been attempted are defective and void, he should be content to controvert such questions in the state court. But why compel him to submit that controversy to a local court, which, according to the spirit and theory

of all removal acts, is supposed to be subject more or less to local influences and prejudices, while for exactly the same reasons and objections his right to remove the controversy in the same suit, involving its merits, to a federal court is conceded and established. I can see no just reason for such distinction and discrimination. The reasons which are held valid and satisfactory to support the right of removal of the case as to its merits are equally of force to support the claim that the removal carries the whole controversy with it. Such a conclusion confers upon the removing party the protection and benefits of the removal act, free from conditions, and involves no hardships upon the plaintiff. His controversy as to the sufficiency of the proceedings by which he claims jurisdiction was acquired over the defendant is carried to the tribunal which by law it is conceded is invested with jurisdiction and power to hear and determine the case on its merits, and I fail to see how he is in any way prejudiced by holding that such removal carries the whole controversy with it. Having thus fully reviewed the statutes and decisions bearing upon this question, because of the great diversity of opinion relating thereto, I am of the opinion, for the reasons stated, that the defendants did not waive their right to controvert the jurisdiction of the state court by filing their petition for removal, and that this motion is now properly before this court for our opinion.

It is contended by the plaintiff that the motion to the jurisdiction filed by the defendants in the state court was broader than the statute contemplated, and that thereby defendants entered an appearance, and are now estopped from questioning the sufficiency of the service. I think the motion filed in this case is formed after the motion of similar character cited and approved in the case of *Smith* v. *Hoover*, 39 Ohio St. 249, and properly enters a special appearance for the purposes of the motion. The return of the sheriff upon the summons issued as hereinbefore quoted shows that none of the defendants were found in Cuyahoga county, where plaintiff's suit was instituted. The return of the same officer on the attachment issued as before quoted shows that " defendants had no goods and chattels, lands and tenements, belonging to them, found in my county." The answers of all the defendants upon whom garnishee process was served disclose that none of them had any credits or property belonging to defendants, or either of them, or was in any way indebted to them. There was therefore no personal service upon the defendants, no *res* to support service by publication, and how can it be claimed they are before the court? In the case of *Cooper* v. *Reynolds*, 10 Wall. 308, Mr. Justice MILLER, delivering the opinion of the supreme court, said:

"The court in such a suit cannot proceed unless the officer find some property of defendants upon which to levy the writ of attachment. A return that none can be found is the end of the case, and deprives the court of further jurisdiction, though the publication may have been duly made and proven in court."

But in the case now under consideration counsel contend that the plaintiff is not concluded by the answers of the garnishees, but may test the truth and sufficiency of such return, denying indebtedness. This is

true in Ohio. But plaintiff has not attempted to controvert these returns of the sheriff, or the answers of the garnishees. The case has been pending in this court quite long enough for the plaintiff to begin his proceedings to show that some property or credits have been attached or garnished.

As the case now stands on the evidence and returns, the motion to dismiss should be allowed, but as counsel for the plaintiff claim they have learned of evidence which will enable them to impeach the truthfulness of the answers of the garnishees, and be able to show that when served with process they had in fact property and credits due the defendants, I will continue the motion to dismiss for 20 days, to enable them to offer such evidence.