(65 N. W. Rep. 686.)

---

STATE *ex rel* E. A. MEARS *vs.* O. G. BARNES.

Opinion filed December 27th, 1895.

### Habeas Corpus—Contempt—Jurisdiction.

In an action in the District Court, a receiver of the defendant corporation was appointed. The corporation was ordered to convey its real estate to the receiver. The petitioner was also ordered to execute such conveyance, as president. He refused to do so, and was adjudged guilty of contempt for such refusal, and was by an order of that court committed to the county jail until he should purge himself of the contempt by executing such conveyance. On *habeas corpus*, *held*, that he could not show that the District Court had before it in the contempt proceeding no evidence "legal and sufficient" to prove that he was president of the corporation, or, assuming him to be president, that he had as such any power to execute such conveyance for the corporation, as this would not show that the court was without jurisdiction to make the contempt order, but merely that it had made an erroneous decision on questions of fact. Such an error can be reviewed only on appeal where the contempt proceeding is civil in its character, as was the contempt proceeding in question.

### Removal to Federal Court—Petition.

Where it appears upon the face of the record that the petitioner is not entitled to a removal of the case to the Federal Court, because the application is not made in time, the filing of the petition does not divest the state court of jurisdiction.

### If Application for Removal to Federal Court is not Made in Time, Right is Lost.

Where a nonresident defendant who is served in this state is entitled to have the service set aside on the ground of priviledge, the service is nevertheless not a nullity; and, for the purpose of determining whether he has made a timely application to have the action removed to the Federal Court, the time within which he must apply begins to run from the time of such service. Accordingly, *held* that, defendant having waited more than 30 days after such service before making such application (the statute of this state requiring him to answer within 30 days after he is served,) his right to have the case removed was lost. The filing of the petition for removal, therefore, did not divest the state court of jurisdiction of the action.

### Right of Intervener to Have Action Removed.

One who has not been allowed to intervene in an action, and who has made no application to be allowed to intervene, has no such relation to the action as will entitle him to petition for the removal of the case to the Federal Court. Whether an intervener can have an action removed to the Federal Court after he has been allowed to intervene, or has been denied that right after due application for leave to intervene, not decided.

Original proceeding on the relation of E. Ashley Mears against O. G. Barnes, sheriff, for discharge on *habeas corpus*.

Writ discharged.

*W. H. Standish* and *M. A. Hildreth*, for relator.
*Newman, Spalding & Phelps*, for defendant.

CORLISS, J. By this proceeding our original jurisdiction is invoked. The petitioner, E. A. Mears, has sued out a writ of *habeas corpus* to inquire into the legality of his imprisonment under an order of the District Court adjudging him guilty of contempt in refusing to obey an order of that court requiring him to execute and deliver, as president of the Bank of Minot, a corporation, certain conveyances of real estate, which, it is claimed, is the property of such corporation. The petitioner bases his application for release from such imprisonment on two grounds: He contends that the order adjudging him guilty of contempt, and imposing on him the punishment of remaining in confinement until he should obey the order directing him to execute such conveyances, is void for want of jurisdiction in the court making it. He also insists that, by reason of certain acts which have been performed by him since the contempt order was made, he has become entitled to his discharge from further imprisonment.

One of petitioner's assaults upon the jurisdiction of the court rests on the assumption that when the order in question was made the action in which it was made was no longer pending. This position is not tenable. In the action referred to, a receiver was appointed, and, while it is undoubtedly true that both the plaintiff and defendant in such action stipulated that it might be

dismissed, this court held, on appeal from an order refusing to enforce such stipulation as against the objections of the receiver, that such receiver was entitled to protection with respect to his fees and expenses, and that before the action could be dismissed he had a right to have his accounts settled and allowed and his fees and expenses ajusted, and to be discharged on complying with the order of the court touching the receivership. *Hoffman v. Bank,* 4 N. D. 473, 61 N. W. 1031. It is not pretended that these necessary steps preliminary to a dismissal of the action had been taken, and the action dismissed, at the time the contempt order was made. That the action was pending, cannot therefore, be doubted. As only jurisdictional matters, as contradistinguished from errors in exercising jurisdiction, are open to inquiry in this proceeding, we must assume in support of the order that the court deemed these conveyances necessary to put the receiver in position to secure the necessary funds wherewith to pay his fees and disbursements as such receiver.

It was further urged that the contempt order was void for the reason that the District Court had before it, when it adjudged the petitioner guilty of contempt, no evidence "legal or sufficient" to show that he was president of such corporation, or had any authority, even assuming that he was president, to execute deeds of corporate real estate. On *habeas corpus* such matters are not open to investigation. It is undisputed that the court had jurisdiction of the person of the petitioner by service of necessary papers on him in such contempt proceeding; and that the District Court has general power to make the contempt order made by it, where the evidence warrants a finding that a party has been guilty of a contempt of the class which the court adjudged the petitioner to be guilty of, cannot be denied. The court had power to hear and determine the questions of fact and of law arising in the contempt proceeding against relator, and for mistakes and errors in its decision its judgment or order would be subject to reversal on appeal. But such mistakes and errors would not divest it of the complete jurisdiction which had already become vested in it

when it entered upon the discharge of its functions, as a court of justice, to hear the case, and decide whether the petitioner had been guilty of contempt. We assume, in deciding this point, that the petitioner could have proved before us, had we permitted him to go into those questions, that there was no legal or sufficient evidence before the District Court showing that he was president of the corporation, or had power as such president to execute the conveyances he was ordered to execute. There is no difference, so far as these questions are concerned, between a final order in a contempt proceeding and a final judgment in a civil or a criminal case. A defendant in a criminal case can never secure his release on *habeas corpus* by showing that there was no evidence of his guilt to sustain the judgment of conviction. For an error of this kind, which does not touch jurisdiction, the law has opened up another channel of redress, and it is only when the case reaches the higher tribunal through this channel that the judgment can be overthrown. In this proceeding we are exercising, not our appellate, but our original, jurisdiction. If the anology between a judgment in a criminal case and the contempt order in question seems defective, because the contempt proceeding culminating in such order was civil in its character (*State* v. *Davis*, 2 N. D. 461, 51 N. W. 942,) we may resort to an anology not open to this criticism. When a defendant in a tort action is seized on execution after final judgment, he cannot on *habeas corpus* attack the judgment, and secure his release from imprisonment by showing that there was no evidence to sustain the judgment adjudging him liable for the alleged tort. The final order in a contempt proceeding, whether of a civil or criminal character, stands upon the same footing in this respect as such a judgment. Mr. Church says on this point: "A contempt, indeed, is in itself a distinct and substantive offense; and, in the case of a court of general jurisdiction, there is no distinction in principle between a judgment pronounced after trial upon indictment, and a summary committal for contempt, so far as

concerns the question of collateral impeachment." Church, Hab. Corp. p. 451. It is true that he is speaking of a case of a judgment in a criminal action and a judgment in a criminal contempt proceeding, but in this respect we can discover no difference between contempt proceedings of a criminal and those of a civil nature. See, in support of our ruling on this branch of the case, *In re Rosenberg*, (Wis.) 63 N. W. 1065; *People* v. *Liscomb*, 60 N. Y. 570; *Ex parte Perkins*, 18 Cal. 64; *Forrest* v. *Price*, (N. J. Ch.) 29 Atl. 218; *State* v. *Houston*, (La.) 4 South. 131; *Ex parte Perdue*, (Ark.) 24 S. W. 423. Our statute in terms declares that except with respect to the question whether the court has exceeded its jurisdiction as to matter, place, sum, or person, and except in cases where the party has become entitled to his discharge by reason of some act, omission, or event which has taken place subsequent to the original imprisonment, and except with regard to certain other questions not relevant to this case, "no court or judge on the return of a *habeas corpus* shall in any other manner inquire into the legality or justice of the judgment or decree of a court legally constituted." Comp. Laws, § 7841.

It is next urged that the petitioner has become entitled to his discharge by reason of his having perfected an appeal from the contempt order. But the mere perfecting of an appeal would not stay the execution of such order. To secure such a stay, the appellant (the petitioner here) should have complied with the provisions of section 15 of chapter 120 of the laws of 1891. That he has made no effort to comply therewith is not disputed. No application was made to the District Court to have that court fix the terms on which it would allow a stay of proceedings.

It is further contended that the District Court was without jurisdiction over the case in which the contempt order was made, at the time it was made, because a sufficient petition for removal of the action to the Federal Circuit Court on the ground of diverse citizenship had been filed previously to that time. The petition was filed by the petitioner in this proceeding. He was not originally made a party defendant to the action, but subse-

quently to the commencement of the action an order was entered directing him to be brought in as a party defendant, and thereafter he was served in this state with a copy of the summons and complaint in the action. At this time he claims that he was a non-resident, and that he was privileged from service of process when these papers were served on him for the reason that he was temporarily in this state, attending, as the general manager of the defendant corporation in such action, the hearing of a motion to vacate the receivership in such action. This claim is made by him to obviate the objection that his petition for transfer was not filed in time, it having been filed more than 30 days after the service of the summons and complaint on him. He insists that the service was illegal, and that, therefore, the time to answer had not expired when he filed this petition. Of course, under the act of 1887, the application must be made before the time to answer has expired, as that time is fixed by the laws of the state in which the action is pending. See *Railroad Co.* v. *Daughtry*, 138 U. S. 298, 11 Sup. Ct. 306. In this state the defendant must answer within 30 days after the service of the summons and complaint. There is no force in the contention of the petitioner that the date of the service of the papers on him should not be considered as fixing the time from which the 30 days in which to answer would begin to run. The service was not void. It was at most only irregular. The court had jurisdiction of the person of the defendant from the moment the papers were served on him. If he had such a standing in the case as defendant as would entitle him to petition for a removal of the cause, he was subject to all the rules which regulate the procedure and fix the rights of defendants on application for the transfer of actions to the Federal Court. See *Construction Co.* v. *Simon*, 53 Fed. 1. Until attacked by a motion to set aside the service, it stands as binding and as effectual as any other service. When the defendant suffered the 30 days after such service to elapse without seeking to have the suit removed to the Federal Court, he had lost his right to go into that court for any purpose. All that was left

him was to claim his privilege in the state court, and, in the event of his defeat on that point, to litigate there the case on its merits, if relieved from his default. Whether he could, after default, insist on his privilege, as a matter of strict legal right, we do not decide, nor do we wish to be regarded as expressing any opinion on this point. Whether a defendant who has not, by a general appearance, waived his right to claim his privilege, may, after securing by timely application the removal of the action to the Federal Court, claim such privilege there, and have the case dismissed, is not before us on this hearing. See *McGillin* v. *Claflin*, 52 Fed. 657. We have assumed, in discussing this point, that the facts set forth in the petition for removal showed that there was a separable controversy with respect to the defendant Mears, who made the application for removal, and that the circumstances under which he was served in the action gave him a right to claim that he was priviledged from service at the time he was so served. We are not unmindful of the rule that questions of fact relating to the right to a transfer of a cause, and which can be determined only by resort to extrinsic evidence, must be litigated in the Federal Court. The state court has no right to try such questions, and from the moment a proper petition is filed, if filed in time, the jurisdiction of the state court is suspended. We have so held, and the rule is as well settled as the reason on which it is founded is obvious. *Miller* v. *Sunde*, 1 N. D. 1, 44 N. W. 301; *Railroad Co.* v. *Daughtry*, 138 U. S. 298, 11 Sup. Ct. 306. But it is equally well established that a state court is not bound to surrender its jurisdiction when, upon the face of the record, it appears that the defendant is not entitled to a removal of the case. Whether he fails to make out a case for a transfer of the action because of the insufficiency of the petition, or because it appears from his own showing, in connection with the record, that his application is not made in time, the rule must, on principle, be the same. The state court, if it correctly decides these questions, will retain jurisdiction of the action, and whether it has rightly decided them will be reviewed by the Federal

Supreme Court on writ of error. *Crehore* v. *Railroad Co.*, 131 U. S. 240, 9 Sup. Ct. 692; *Stone* v. *South Carolina*, 117 U. S. 432, 6 Sup. Ct. 799; *Railroad Co.* v. *Daughtry*, 138 U. S. 298, 11 Sup. Ct. 306. We think, also, that it would be our duty to hold that the state court was without jurisdiction, had the petition been presented in time, and been sufficient in its averments, and had all the requirements of the statute been fully complied with, although as a matter of fact, that court had held that on the face of the proceedings the petition was not sufficient, or had not been filed in time. The distinction between the two rules may be thus stated: The state court has no jurisdiction to pass on disputed questions of fact, because there is no mode of reviewing such a decision in the Federal Courts. If it could decide such controverted questions of fact at all, it must, from the necessity of the case, decide them finally, and thus the jurisdiction of the Federal Courts would in these cases be at the mercy of the state tribunals. But, when the state court decides on the face of the record, then its decision is open to investigation; and, if it was right in its ruling, no sound principle requires it to wait until an inferior Federal Court has sent back the case with permission to proceed. The state court has no jurisdiction to decide a disputed question of fact affecting the right of the Federal Court to take jurisdiction, even if it correctly decides it. But it has jurisdiction to decide a question of law arising on the face of the papers, if the decision proves to have been correct. If, on the application for removal, there had been any claim that there had been a waiver of the element of time, by something outside of the record, it might be urged with great force that that question of fact might be settled by the Federal Court, and that until it was settled the state court was without jurisdiction to proceed. But no such claim was made, nor is it here pretended that the matter of time was waived. That it may be waived, see *Ayers* v. *Watson*, 113 U. S. 594, 5 Sup. Ct. 641; *Gerling* v. *Railroad Co.*, 151 U. S. 673, 14 Sup. Ct. 533.

It is next urged that the action was transferred to the Federal

Court by the petition of one Hawkins, an alleged intervenor in the case. Without discussing the question whether an intervener, under our statutes, is the proper party to petition for a removal, —whether he comes within the purview of the act of congress relating to the subject,—we are compelled to hold that this petition did not affect the jurisdiction of the state court, for the reason that at the time it was filed Hawkins was a stranger to the action. He could not intervene without leave of court, embodied in an order. Comp. Laws, § 4886. No such leave was obtained. No order of this kind was entered. Indeed, no application for leave to intervene was ever made. Had it been made and improperly overruled, and then had the petition in question been filed, a different question would have been presented. There appears to have been a consent on the part of the plaintiff that Hawkins might intervene, but no such consent on behalf of the defendant corporation or the receiver was ever obtained. We reach the conclusion that the District Court had jurisdiction to make the contempt order, and we are unable to agree with counsel for the petitioner that by reason of anything subsequently occurring the petitioner became entitled to his discharge.

The writ is therefore discharged, and the petitioner is remanded to the custody of the sheriff, O. G. Barnes. All concur.