Willis McGUIRE, Petitioner,

v.

The WARDEN OF the STATE FARM
[STATE PENITENTIARY],
Respondent.

Crim. No. 514.

Supreme Court of North Dakota.

April 28, 1975.

Henry H. Howe, Valley City, for petitioner.

John T. Paulson, State's Atty. for Barnes County, Valley City, for State of North Dakota.

VOGEL, Justice.

McGuire, by his attorney, Howe, seeks to be discharged from confinement, invoking the original jurisdiction of this court in habeas corpus. It is alleged that McGuire (hereinafter called petitioner) is imprisoned and deprived of his liberty by the Warden of the State Farm (actually Warden of the State Penitentiary) under the pretended authority of an order of the district court of Barnes County, which he alleges is void. He claims that the notice given him of the charge lacked specificity; that the person making the charge, even though a judge, may not try it; that the Uniform Post-Conviction Procedure Act unconstitutionally limits the right of habeas corpus; and that the statute cited by the court as its authority to act was superseded.

Petitioner was charged with the crime of possession of a controlled substance and pleaded guilty to the charge on November 6, 1974. Pursuant to Section 12–53–13, N.D.C.C., the district court of Barnes County suspended the imposition of sentence and placed the defendant on probation pursuant to Section 12–53–14, N.D.C.C.

On February 6, 1975, the court, having heard of a possible violation of the terms of probation by McGuire, on its own motion ordered a hearing upon the alleged violation of the rules of probation. A copy of the order was served upon McGuire, he was arrested, a hearing was held, and he was sentenced to a six-months' term in the State Farm, under the jurisdiction of the Warden of the State Penitentiary.

He petitioned for a writ of habeas corpus to the district court of Burleigh County, which declined to accept jurisdiction and remanded the prisoner. He then invoked our original jurisdiction.

## I. THE AUTHORITY OF THIS COURT

■ The authority of this court under Section 86 of the Constitution of North Dakota is appellate only, subject to certain exceptions. Several exceptions are found in Section 87. One specifically authorizes the Supreme Court to issue writs of habeas corpus. Such authority is reiterated in Section 27–02–04, N.D.C.C.

■ In Carruth v. Taylor, 8 N.D. 166, 174, 77 N.W. 617, 620 (1898), this court held:

"It goes without saying that all persons in durance vile in this state have a constitutional right to invoke the original jurisdiction of this court to issue and hear the writ of habeas corpus; nor can the legislature by any enactment wholly deprive this court of such original jurisdiction in any case."

## II. THE JURISDICTION OF THE DISTRICT COURTS

In Carruth v. Taylor, supra, it was held that the Legislature had the power to regulate habeas corpus proceedings, and to place reasonable restrictions upon the exercise of the constitutional right, and that the Legislature might limit the venue of habeas corpus proceedings to the judicial district of confinement, as it did in Section 8651, Revised Code of 1899, now Section 32–22–04, N.D.C.C., permitting district courts to issue writs of habeas corpus on behalf of "any person restrained of his liberty in their respective districts." During the years since Carruth v. Taylor the statutes of this State as to habeas corpus have been changed, the greatest change coming with the adoption of the Uniform Post-Conviction Procedure Act, Chapter 29–32, N.D.C.C., in 1969 (Ch. 304, 1969 S.L.). This Act provides, in subdivision 2 of 29–32–01, that the post-conviction remedy

" . . . is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction. Except as otherwise provided in this chapter it comprehends and takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them."

It further provides, in Section 29–32–02:

"The district court in which, by the constitution of this state, original jurisdiction in habeas corpus is vested, may entertain in accordance with its rules a proceeding under this chapter in the exercise of its original jurisdiction. In that event, this chapter, to the extent applicable, governs the proceeding."

■ Although the words "habeas corpus" are not used in the quoted portion of 29–32–01, it is clear, we believe, that the Uniform Post-Conviction Procedure Act was intended to replace, so far as persons arrested for, or convicted of, violations of criminal law are concerned, the habeas corpus statutes.[1] The Legislature's failure to repeal the habeas corpus statutes is due, we presume, to the fact that these statutes apply also to civil matters such as determination of child custody, or of the right to release from a mental institution and propriety of confinement for civil contempt.[2]

■■ If the provisions of the Uniform Post-Conviction Procedure Act were less favorable to the accused than the constitutional right of habeas corpus, we would necessarily have to hold the Uniform Post-Conviction Procedure Act to that extent unconstitutional, in view of the peremptory mandate of the Constitution of North Dakota, Section 5, that:

"The privilege of the writ of habeas corpus shall not be suspended unless, when in case of rebellion or invasion, the public safety may require."

However, we find no provision of the Act which restricts the constitutional right. The petitioner argues that the requirement of the Act that he bring his petition before the district court in the district of conviction, rather than the district of confinement, constitutes an unreasonable restriction upon his right to the writ. We believe, however, that it is a reasonable regulation. As mentioned, we held in Carruth v. Taylor that a requirement that the petition be filed in the district of confinement was constitutionally permissible. We likewise find now that a requirement of filing a petition under the Uniform Post-Conviction Procedure Act in the district of conviction is constitutionally permissible. It may, in fact, be preferable for both the State and the petitioner, since, as the Commissioners on Uniform State Laws point out in their Comment, § 3:

"The advantages of this change are: (1) It will reduce the burden of the courts at the place of confinement; (2) since most of the witnesses who are called are likely to be found in the area of the conviction, the costs of the proceeding will be reduced; (3) the convicting court is more familiar with the background and facts of the case." Uniform Laws Annotated, p. 512.

See also, United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), holding constitutional a Federal post-conviction procedural statute, 18 U.S.C. § 2255. As the United States Supreme Court there said:

"Nowhere in the history of Section 2255 do we find any purpose to impinge upon

1. See Commissioners' Comment, Uniform Post-Conviction Procedure Act (Uniform Laws Annotated § 3); and Dionne v. State, 93 Idaho 235, 459 P.2d 1017 (1969).

2. See, for example, In re Wagner, 84 N.W.2d 587 (N.D.1957), as to child custody; Sec. 25–03–21, N.D.C.C., as to persons committed to mental institutions; State ex rel. Mears v. Barnes, 5 N.D. 350, 65 N.W. 688 (1895), as to persons committed for civil contempt.

prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." 342 U.S. at 219, 72 S.Ct. at 272.

We have explored the constitutionality of the Uniform Post-Conviction Procedure Act because the petitioner, prior to his petition here, applied to the district court of Burleigh County (the district in which he is confined) for a writ of habeas corpus. That court refused to issue the writ, and the petitioner claims it had no right to refuse. The district court based its refusal upon the permissive language of Section 29–32–02, N.D.C.C., quoted above, and elected to refer the petitioner to the district in which he was convicted, and to the Uniform Post-Conviction Procedure Act. We hold, contrary to the contentions of the petitioner, that Section 29–32–02, N.D.C.C., quoted above, is permissive; that the district court of Burleigh County was within its discretion in so acting; and that the Uniform Post-Conviction Procedure Act, so far as it affects the venue of district courts, is not unconstitutionally restrictive.[3]

For reasons we have stated, because of the provisions of the Uniform Post-Conviction Procedure Act and in the interest of orderly management of the case flow of the courts, petitions for relief in the nature of habeas corpus should normally be directed to the court in the district of conviction, under the Uniform Post-Conviction Procedure Act.

The right of petition to the Supreme Court for a writ of habeas corpus in its original jurisdiction is still preserved [Constitution, Sec. 87, and Carruth v. Taylor, supra], but we may decline to exercise our jurisdiction if the petition for the writ can be, but has not been, made to the district court.

## III. THE NOTICE AND HEARING IN THE DISTRICT COURT

It is apparent from the foregoing discussion that the petitioner should have presented his petition to the district court in Barnes County, the county in which he was convicted. At this point we could refuse the writ and direct the petitioner to the district court for relief. However, since we have original jurisdiction, and the parties have briefed and argued the merits, our decision on the merits will be based upon a documentary record presently before us. Since the matters raised are of substantial importance and have not been settled in this State previously, we will make a decision on the substantive questions presented.

Petitioner's strongest attacks on the proceedings against him, resulting in his imprisonment, are (1) that he was deprived of due process by being rearrested by virtue of an order entered by the district court upon the judge's own motion, which (2) did not specify the grounds for the arrest.

The order reads:

"Whereas, the above named defendant pleaded guilty to a felony and was given a deferred imposition of sentence within Section 12–53–13 NDCC, said order being on file with the Clerk of the District Court of the above county; and

"Whereas, under Section 12–53–15 NDCC, this Court has reason to believe that the above named defendant is violating the terms of his probation as set out in the deferred imposition order filed with the Clerk in the above entitled case; and

"Whereas this Court finds it necessary to have a probationary hearing upon alleged violation of the rules of probation;

"Now, therefore, it is hereby ordered that any peace officer may re-arrest the

3. If it were construed to abolish or unduly restrict the original habeas corpus jurisdiction of this court it would be, to that extent, unconstitutional, since our jurisdiction derives from the Constitution, Sec. 87, and not from statute. See Carruth v. Taylor, supra.

above named probationer without warrant or other process, and that said defendant be held for hearing as set by the Court."

■ Preliminarily, petitioner asserts that Section 12–53–15, N.D.C.C., upon which the district court of Barnes County based its authority, has been superseded by Rule 32(f), N.D.R.Crim.P., and that the court therefore had no authority whatever to order the arrest of petitioner. We do not view this as fatal. A mere misstatement of the authority for a judicial act does not destroy efficacy of the court's ruling, if the authority can be found elsewhere. Johnson v. Auran, 214 N.W.2d 641 (N.D.1974); Damm v. National Insurance Company of America, 200 N.W.2d 616 (N.D.1972); Heinzeroth v. Bentz, 116 N.W.2d 611 (N.D.1962); Bonde v. Stern, 72 N.D. 476, 8 N.W.2d 457 (1943).

■ We therefore will treat the court's order as if it were brought under Rule 32(f). The petitioner is correct in stating that Rule 32 superseded Section 12–53–15, N.D. C.C. See explanatory note to Rule 32.

One of the petitioner's attacks upon the process by which he was rearrested is that it was based upon the motion of the judge of the district court, who thereby became an interested party and was ineligible to try the case under the doctrines set forth in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). These two cases set forth the minimum requirements of due process in the arrest of probationers and parolees accused of violation of the terms of their probation or parole.

Morrissey v. Brewer, *supra,* requires a sort of preliminary hearing, prior to the hearing at which probation may be revoked, by "an uninvolved person" because

"The officer directly involved in making recommendations cannot always have complete objectivity in evaluating them."

Even at this preliminary hearing,

" . . . the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer." Morrissey v. Brewer, *supra,* at 408 U.S. 486–487, 92 S.Ct. 2603.

■ These requirements, applied to suspected parole violators in Morrissey v. Brewer, *supra,* were extended to suspected probation violators by Gagnon v. Scarpelli, *supra.*

The minimum requirements of the second hearing include:

"(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey v. Brewer, *supra,* at 408 U.S. 489, 92 S.Ct. 2604.

■ It seems clear to us that these requirements are based in large part upon the recognition by the Supreme Court of the

special status of probation and parole officers. The functions of such officers are outlined in *Gagnon* at pages 784 and 785, 93 S.Ct. 1756 and in *Morrissey* at 478–479 and 485–486, 92 S.Ct. 2593. Many of these considerations do not apply to a trial judge, who has no duty of supervising the parolee or probationer, is not "compromised by recommending of confinement of one he is supervising," and who has a well-defined judicial impartiality to maintain. Because of these considerations, we decline to hold that an order by a sentencing judge for the arrest of a probationer upon the judge's own motion compels that the hearing on the motion be conducted by some other judge.

The question is a difficult one, and analogies can be found to lead to a decision either way. On the one hand, judges are sometimes forbidden to determine contempt charges based on contempts committed in their presence or in violation of their orders. See Rule 42(b), N.D.R.Crim.P.; Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

■■■ On the other hand, it is permissible for a judge on his own initiative to reduce a sentence he imposed within 120 days (Rule 35, N.D.R.Crim.P.), and to hear and determine charges of contempt of his court in some cases (e. g., where the contempt does not involve disrespect to or criticism of a judge). Rule 42(b), N.D.R.Crim.P. There is no disrespect to or criticism of a judge involved in the usual probation violation, and by analogy to the law of contempt we find no bar to further action by the judge merely because he initiated the proceedings leading to revocation.

Counsel has cited no case involving similar facts. Our research has located Edwardsen v. Gray, 352 F.Supp. 839 (E.D.Wis. 1972), which has some factual similarity. In that case the Federal court held, at pages 842–843:

" . . . the 'appearance of justice' would have been better served had Judge Stoltz granted petitioner's motion to disqualify himself from proceeding with the

revocation hearing on the ground that he had an interest in the litigation, particularly where he made a preliminary determination on the return of the capias that petitioner had failed to offer a 'plausible' excuse for his nonappearance . . . "

But the decision granting the petition for a writ of habeas corpus was based primarily upon the trial judge's use of matters outside the record to make a determination that the petitioner's excuse for nonappearance was not "plausible." In the case before us, there is no contention that the district judge was in fact biased or personally involved; the only contention is that the rules of *Gagnon* and *Morrissey* precluded him from acting. We hold that they do not. We decline to equate the action of a judge ordering a hearing on his own motion on an alleged violation of probation with the action of a parole officer in making a complaint for the same purpose.

■■■ Nor do we believe that *Gagnon* and *Morrissey* contain an absolute requirement that there must be two hearings, rather than one, when probation violation proceedings are commenced on the motion of the court itself. The requirements of *Gagnon* and *Morrissey* are directed to the requirement of due process in initial proceedings before administrative officers and bodies, and not to judicial proceedings before courts of record and of general jurisdiction.

Finally, we come to petitioner's contention that the order of the district court deprived him of due process because the notice in writing given to him was inadequate to disclose the nature of the claimed violation. With this contention we must agree.

■■■ The order charged only that "this Court has reason to believe that the above named defendant is violating the terms of his probation as set out in the deferred imposition order filed with the Clerk in the above entitled case; . . . " No specific allegations were made. Upon his arrest under this order, the petitioner had no way of knowing what statute or order he had violated or in what way he had

done so. Nor could his attorney, if he chose to have one, adequately prepare for the hearing on the basis of the charge made. The requirement of *Morrissey* and *Gagnon* that "the notice should state what parole violations have been alleged" imports a degree of specificity that is lacking from the general statement in the court's order.

Further, we hold that the order of the district court similarly lacks the specificity required by Rule 32(f), N.D.R. Crim.P., which we have held applicable herein (the statute upon which the court relied having been superseded). Rule 32(f) requires that there be a "prior written notice of the alleged violation given to the petitioner, . . ." We hold that this provision requires, as do *Morrissey* and *Gagnon*, that the notice contain sufficient specificity to enable the defendant and his counsel to know and understand the nature of the charge against him and to prepare for a hearing on the charge.

We do not intend to require the specificity of an indictment or information. Rhodes v. State, 491 S.W.2d 895 (Tex.Cr. App.1973). But the process must at least name or describe the law or order the petitioner is charged with violating and give some indication of the circumstances of the alleged violation so that he and his attorney, if any, can prepare for the hearing.

We therefore direct that the petitioner be released from confinement and returned to the status of probationer, subject, however, to the right of the State to invoke new proceedings against him for any violation of the terms of probation which he may be alleged to have committed and of which notice is given to him which is legally and constitutionally sufficient.

ERICKSTAD, C. J., PEDERSON and SAND, JJ., and EMIL A. GIESE, District Judge, concur.

WM. L. PAULSON, J., deeming himself disqualified, did not participate; EMIL A. GIESE, District Judge of the Sixth District, sitting in his place.