**STATE of North Dakota,
Plaintiff-Appellee,**

v.

**Marvin Edward HASS,
Defendant-Appellant.**

**Crim. No. 615.**

Supreme Court of North Dakota.

March 3, 1978.

Daniel J. Chapman, Bismarck, for defendant-appellant.

Richard L. Schnell, State's Atty., Mandan, for plaintiff-appellee.

PAULSON, Judge.

This is an appeal by the probationer, Marvin Edward Hass, from the order of the Morton County District Court entered June 10, 1977, in which Hass' probation was revoked and from the subsequent imposition of sentence entered by the same court on

June 27, 1977. Hass contends that various prejudicial errors were committed with regard to the revocation proceedings and he requests this court to reverse both the order revoking probation and the subsequent imposition of sentence.

On October 5, 1976, Hass entered a plea of guilty on a charge of the class C felony of reckless endangerment. On October 12, 1976, the Morton County District Court, pursuant to § 12–53–13 of the North Dakota Century Code, issued an order deferring imposition of sentence on the guilty plea for a period of one year commencing retroactively from October 5, 1976, and placing Hass on probation for a period of one year pursuant to § 12–53–14, N.D.C.C.

On May 2, 1977, a criminal complaint was filed in the Morton County District Court charging Hass with the criminal act of terrorizing. On May 3, 1977, Martin Stivers, a deputy sheriff for Morton County, filed a verified petition for revocation of Hass' probation with the Morton County District Court. Stivers alleged in the petition that Hass had violated the terms of his probation on May 1, 1977, when he "did threaten a number of people with a .22 [caliber] rifle and threatened to kill them and did in fact fire several shots". The petition requested the court to order that Hass be brought before the court to show cause why his probation should not be revoked. This incident, by which Hass allegedly violated the terms of his probation, was the same incident upon which the criminal complaint was filed against Hass on May 2, 1977.

On May 9, 1977, the Morton County District Court issued an order stating that, based upon the verified petition filed by Stivers, Hass may have violated conditions of his probation, and ordering that Hass be brought before the court for probation revocation proceedings.

On May 11, 1977, Hass was personally served with a copy of the Petition for Revocation of Probation and Order to Apprehend Probationer.

On May 18, 1977, Hass appeared before the court, with counsel, on the matters relating to his probation revocation, and requested a continuance until his retained counsel, who was not able to attend the hearing because of a conflicting commitment, could be present to represent him. The court granted the continuance, and the probation revocation hearing was subsequently held on May 25, 1977.

Both the State and Hass called witnesses to testify at the hearing. Hass also chose to testify on his own behalf.

Rule 5 of the agreement Hass had signed as a condition of his probation stated "I will not own, purchase, borrow, possess or carry firearms or weapons". The trial court concluded that the state had proved by a preponderance of the evidence that Hass had violated this condition of his probation agreement. Consequently, the court revoked Hass' probation, and, on June 27, 1977, the court sentenced Hass on the reckless endangerment conviction to the North Dakota State Farm for a period of one year, with eight months of this sentence to be suspended upon the condition that Hass pay the costs of the revocation hearing.

Hass has raised the following issues on appeal as grounds upon which he requests this court to reverse the order revoking his probation and the subsequent imposition of sentence:

1. Whether Hass was denied his right to a sufficiently specific notice of the probation revocation hearing and of his alleged probation violations.

2. Whether Hass was denied his right to a preliminary probable cause probation revocation hearing.

3. Whether Hass was unconstitutionally compelled to choose between asserting his constitutional right to testify at the probation revocation hearing or his constitutional right against compelled self-incrimination at the subsequent criminal trial regarding the same incident.

When the trial court defers imposition of sentence pursuant to § 12–53–13, N.D.C.C., the defendant is placed on probation and becomes subject to the orders and regulations of the parole board and to such

terms and conditions as the court may impose. The trial court retains jurisdiction over the defendant for the purpose of revoking his probation and of passing sentence at some future date. *John v. State,* 160 N.W.2d 37 (N.D.1968). The procedures set forth in Rule 32(f) of the North Dakota Rules of Criminal Procedure must be followed for the revocation of probation in those cases in which the trial court has retained jurisdiction over the defendant-probationer. In addition, the potential deprivation of liberty consequent to probation revocation entitles the probationer to certain procedural due process rights under the United States Constitution. *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

Hass' first issue on appeal is whether he received adequate written notice of the revocation hearing and of his alleged violations of his probation conditions. Hass asserts that the written notice did not include a statement of the time or place for the hearing and that the notice did not adequately disclose the nature of his alleged probation violations.

■ The probationer is entitled to a prior written notice of his alleged violations of probation. Rule 32(f), N.D.R.Crim.P.; *Scarpelli, supra.* This court *held,* in *McGuire v. Warden of State Farm,* 229 N.W.2d 211 (N.D.1975), that such notice must contain "sufficient specificity to enable the defendant and his counsel to know and understand the nature of the charge against him and to prepare for a hearing on the charge". The petitioner in the *McGuire* case asserted that the probation revocation notice he received was legally inadequate in that it failed to sufficiently disclose the nature of the claimed probation violation. The notice received by the petitioner was a court order which stated the court had reason to believe the petitioner was violating the terms of his probation, but which did not contain any specific allegations. This court agreed with petitioner's contention

that the notice was legally inadequate and ordered that petitioner be released from confinement subject to the State's right to invoke new probation revocation proceedings.

The notice received by Hass in the instant case is clearly distinguishable from the notice received by the petitioner in *McGuire, supra.* Hass was personally served with a copy of the Petition for Revocation of Probation and Order to Apprehend Probationer on May 11, 1977. The petition stated, in relevant part, as follows:

"That upon information and belief, the aforesaid defendant has violated one or more of the conditions of probation in the following particulars:

"That on May 1, 1977, the defendant, Marvin Hass, did threaten a number of people with a .22 rifle and threatened to kill them and did in fact fire several shots and further that said Marvin Hass is currently charged with the crime of terrorizing as a result of said incident."

The revocation hearing proceedings and the trial court's findings upon which Hass' probation was revoked were directed solely toward the circumstances surrounding the incident on May 1, 1977, referred to in the petition. We conclude that the written notice received by Hass was sufficiently specific to enable Hass and his counsel to know and understand the nature of the probation violation charges against him and to prepare for the probation revocation hearing.

■ Hass further asserts that the written notice was inadequate because it failed to contain a statement of the time and place for the probation revocation hearing. There may be circumstances in which failure to provide written notice of the time and place of the probation revocation hearing will prejudice a probationer's right to a probation revocation hearing. However, the record in this case demonstrates beyond dispute that Hass was not prejudiced by failure of the notice to contain a statement of the time and place of the hearing. On May 18, 1977, Hass appeared with counsel before the court and requested a continuance. The trial court granted the request

for a continuance, the probation revocation hearing was rescheduled to May 25, 1977, and Hass appeared at the May 25, 1977, hearing with retained counsel. We conclude that Hass received adequate prior written notice of the probation revocation hearing and of his alleged probation violations.

The second issue Hass raises on this appeal is whether he was denied his right to a preliminary probable cause probation revocation hearing.

Rule 32(f), N.D.R.Crim.P., provides that "Upon probable cause to believe that a probationer has violated a condition of his probation" the court having jurisdiction can order that the probationer be taken into custody and brought before the court for a probation revocation hearing. A preliminary probation revocation hearing is not required under Rule 32(f), N.D.R.Crim.P., where the court has retained jurisdiction over the probationer. Nor do we believe that the probationer, under the facts of this case, has a constitutional right to a preliminary probation revocation hearing.

In *Morrissey, supra,* the United States Supreme Court set forth the procedural due process rights to which a parolee is entitled with regard to parole revocation, and these rights include a preliminary probable cause determination by an independent officer who need not be a judicial officer. Chief Justice Burger, writing for the majority stated, 408 U.S. at 485, 92 S.Ct. at 2602, "Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." In *Scarpelli, supra,* the Court held that the due process rights enumerated in *Morrissey, supra,* were also applicable to a probationer with regard to revocation of his probation.

However, the factual situations in *Morrissey, supra,* and *Scarpelli, supra,* upon which the United States Supreme Court found a due process right to both a preliminary and a final revocation hearing are clearly distinguishable from the circumstances in the instant case. The situation posed by the Court in *Morrissey, supra,* is one in which the parolee is arrested at the direction of a parole officer where there is typically a substantial lag between the arrest and the eventual determination of parole revocation by a parole board. In *Scarpelli, supra,* the probationer had been sentenced to fifteen years' imprisonment by the trial court. However, the sentence was suspended and the probationer was placed in the custody of officials of the Wisconsin Department of Public Welfare, who subsequently revoked his probation. In the instant case, unlike the circumstances in *Morrissey, supra,* or *Scarpelli, supra,* the trial court deferred imposition of Hass' sentence and thereby retained jurisdiction over Hass. Based upon a verified petition citing specific facts of alleged probation violations by Hass, the trial court, not a parole or probation officer, determined that Hass may have violated the conditions of his probation and ordered that Hass be brought before the court for probation revocation proceedings. Hass was not apprehended or incarcerated on the probation violation charges prior to the probation revocation hearing, and he voluntarily appeared at the hearing.

In the case of *McGuire v. Warden of State Farm,* 229 N.W.2d 211, 218 (N.D. 1975), this court made the following statement regarding the requirement of a preliminary probation revocation hearing:

"Nor do we believe that *Gagnon* and *Morrissey* contain an absolute requirement that there must be two hearings, rather than one, when probation violation proceedings are commenced on the motion of the court itself. The requirements of *Gagnon* and *Morrissey* are directed to the requirement of due process in initial proceedings before administrative officers and bodies, and not to judicial proceedings before courts of record and of general jurisdiction."

We conclude that, under the circumstances of this case, Hass was not entitled to a preliminary probation revocation hearing. We further conclude that the verified peti-

tion, upon which the trial court based its determination to institute the probation revocation hearing, contains sufficient information to satisfy the "probable cause" requirement of Rule 32(f), N.D.R.Crim.P.

The third issue Hass raises on this appeal is whether he was unconstitutionally compelled to choose between asserting his constitutional right to testify at the probation revocation hearing and his constitutional right to remain silent at the subsequent trial regarding the same incident. The probation revocation hearing was held prior to the trial on the criminal charges arising from the same incident, and Hass was not given immunity for his testimony at the probation revocation hearing with regard to the use of that testimony at the subsequent criminal trial. Hass asserts that if he had refused to testify at the probation revocation hearing, he thereby would have waived his right to challenge adverse evidence which was presented at that hearing, and, on the other hand, by choosing to testify at the probation revocation hearing he involuntarily waived his right to remain silent concerning the facts of the subsequent criminal trial. Hass asserts he was therefore unconstitutionally compelled to assert one constitutional right (i. e., the right to testify at the probation revocation hearing) at the expense of waiving another constitutional right (i. e., the right to remain silent at the criminal trial). We disagree.

■ The Fifth Amendment right against compelled self-incrimination is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). "The [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). Thus, a person cannot be compelled to waive his Fifth Amend-

ment privilege and to furnish possibly incriminating testimony unless the State grants that person immunity which protects against the use of his compelled testimony, and the evidence derived therefrom, in any subsequent criminal case in which he is a defendant. *Lefkowitz v. Turley, supra; Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Murphy v. Waterfront Com'n of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

■ Hass' first contention regarding this issue is that he was "compelled" to testify at the probation revocation hearing because the prosecution was only required to prove its case by a preponderance of the evidence, which made it imperative for Hass to testify in answer to the charges against him. We disagree. The facts of the instant case do not demonstrate the type of "compelled" testimony which would constitutionally require Hass' testimony to be immunized from use against him in subsequent criminal proceedings. Thus, the instant case is clearly distinguishable from the following cases in which the United States Supreme Court found "compelled" testimony constitutionally requiring a grant of immunity from its later use.

In *Murphy, supra*, the petitioners were subpoenaed to testify at a hearing and refused to testify on the ground that their answers might tend to incriminate them under federal law. The petitioners had been offered immunity from prosecution under state law but were refused protection against federal prosecution. When they refused to testify, they were held in contempt of court. The United States Supreme Court held that this was an attempt to compel the petitioners to testify, which violated their Fifth Amendment right against self-incrimination.

In *Lefkowitz, supra*, the appellees were two architects who were summoned to testify before a grand jury investigating various charges of conspiracy, bribery, and larceny. The appellees were requested to sign waivers of their Fifth Amendment right against

self-incrimination, which would have permitted the use of their testimony against them in subsequent criminal proceedings. The appellees refused to sign the waivers and, solely upon the ground of their refusal, a New York statute permitted cancellation of their existing contracts with the State and disqualified them from obtaining future contracts with the State. The United States Supreme Court held that, in the absence of immunity protecting against the use of appellees' testimony at subsequent criminal proceedings, the appellees' disqualification from contracting with the State for their failure to testify was an unconstitutional attempt by the State to compel testimony in violation of appellees' Fifth Amendment rights.

In *Garrity, supra,* certain police officers were summoned to testify at an attorney general's inquiry concerning irregular police procedures. The police officers were offered no immunity with respect to the use of their testimony in subsequent criminal proceedings against them, and they were informed that they would lose their jobs if they failed to testify. The United States Supreme Court held that the state's threat of removal from office, based upon the sole ground of failure to testify, was an unconstitutional attempt to compel one's testimony in violation of the Fifth Amendment right against compelled self-incrimination.

Thus, the United States Supreme Court found unconstitutionally compelled testimony in the above discussed cases where the failure of the witness to testify and his refusal to waive Fifth Amendment rights resulted, without regard to other factors, in a citation for contempt, loss of employment, or loss of contractual rights. The facts of the instant case are clearly distinguishable. In the case at bar, the State was required to prove by a preponderance of the evidence that Hass violated the conditions of his probation. Rule 32(f), N.D.R.Crim.P. Hass was free to choose between testifying or remaining silent, and, in the event he made the latter choice, his silence, in and of itself, would not have been sufficient grounds upon which the court could have revoked his probation.

The case of *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), involved a prison disciplinary hearing at which Palmigiano was advised that he could remain silent but that his silence could be used against him. Palmigiano appealed on the ground that he was unconstitutionally compelled to testify without immunity, in violation of his Fifth Amendment right against self-incrimination. The United States Supreme Court held there was no unconstitutional violation of Palmigiano's Fifth Amendment rights. The following rationale of the Court as stated by Justice White, writing for the majority, in *Palmigiano, supra* 425 U.S. at 317, 96 S.Ct. at 1557, is applicable to our determination in the instant case:

"It is thus undisputed that an inmate's silence in and of itself is insufficient to support an adverse decision by the disciplinary board. In this respect, this case is very different from the circumstances before the Court in the *Garrity-Lefkowitz* decisions, where refusal to submit to interrogation and to waive the Fifth Amendment privilege, standing alone and without regard to the other evidence, resulted in loss of employment or opportunity to contract with the State. There, failure to respond to interrogation was treated as a final admission of guilt. Here, Palmigiano remained silent at the hearing in the face of evidence that incriminated him; and as far as this record reveals, his silence was given no more evidentiary value than was warranted by the facts surrounding his case. This does not smack of an invalid attempt by the State to compel testimony without granting immunity or to penalize the exercise of the privilege."

In the instant case, as in *Palmigiano, supra,* Hass' choice to assert his Fifth Amendment right to remain silent was not sufficient ground, in itself, on which adverse consequences would result. Hass was perhaps faced with a difficult strategy decision of whether to answer the charges against him by use of his own testimony or whether to assert his Fifth Amendment privilege at the

risk that the State would thereby have sufficient evidence to sustain its burden of persuasion. The fact that Hass was required to make such a choice, regardless of how difficult, did not render his testimony unconstitutionally "compelled" by the State. "It is not contended, nor could it be successfully, that the mere force of evidence is compulsion of the sort forbidden by the [Fifth Amendment] privilege." *McGautha v. California,* 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971). We conclude that Hass was not "compelled" to testify or to waive his right to remain silent in violation of his Fifth Amendment right against compelled self-incrimination.

■ Hass' second contention with regard to this issue is that the choice he was required to make between testifying at the probation revocation hearing or remaining silent to preserve his right against compelled self-incrimination at the criminal trial created an intolerable tension between these two constitutional rights, which violated his right against compelled self-incrimination and his right to due process. Hass' contention is based primarily on the reasoning enunciated by the United States Supreme Court in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In *Simmons,* the United States Supreme Court held that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony cannot thereafter be used against him at the trial on the issue of guilt unless he makes no objection. The Court determined that if such testimony could be used at the criminal trial, then any defendant who testified to establish standing to assert a Fourth Amendment objection would be forced to do so at the risk his testimony would later be used to incriminate him. The Court concluded that the use of such testimony at the trial created an unconstitutional tension between constitutional rights which required a defendant to either give up what he believed to be a valid Fourth Amendment claim or to waive his Fifth Amendment privilege against self-incrimination.

*McGautha, supra,* involved a prosecution for murder in which the death sentence could have been imposed. A unitary trial was held at which the issue of defendant's guilt as well as the issue of his punishment was decided. The defendant argued that the unitary trial unconstitutionally forced him to make a choice to testify for a lenient sentence and thereby risk self-incrimination, or to remain silent and thereby risk a harsh sentence. The United States Supreme Court held that the unitary trial did not unconstitutionally violate the defendant's Fifth Amendment right against compelled self-incrimination. Justice Harlan, writing for the Court, questioned the rationale of *Simmons, supra,* wherein the Court had found an unconstitutional tension between constitutional rights, in *McGautha, supra* 402 U.S. at 212, 91 S.Ct. at 1470, wherein he stated:

"While we have no occasion to question the soundness of the result in *Simmons* and do not do so, to the extent that its rationale was based on a 'tension' between constitutional rights and the policies behind them, the validity of that reasoning must now be regarded as open to question, and it certainly cannot be given the broad thrust which is attributed to it by Crampton [petitioner] in the present case."

Based upon the language of the Court in *McGautha, supra,* it appears that the result in *Simmons, supra,* now rests exclusively on the rationale that to allow the use of a defendant's suppression hearing testimony at the trial would unacceptably deter the assertion of Fourth Amendment claims.

With regard to the defendant's admittedly difficult decision between testifying or asserting his Fifth Amendment right to remain silent, the Court, in *McGautha, supra,* 402 U.S. at 213, 91 S.Ct. at 1470, stated:

"The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. *McMann v. Richardson,* 397 U.S. [759] at 769, 90 S.Ct. [1441] at 1448, [25 L.Ed.2d 763]. Although a defendant may have a right, even of constitutional dimensions,

to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved."

In the instant case, Hass' difficult decision of whether or not to testify at the probation revocation hearing is essentially the same type of decision that defendant was required to make in *McGautha, supra.* The circumstances required Hass to make a difficult decision, but neither his Fifth Amendment right against compelled self-incrimination nor his due process right to testify was violated thereby.

The case of *Flint v. Mullen,* 499 F.2d 100 (1st Cir. 1974), *cert. denied,* 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301, involved substantially the same issue as Hass has raised in the instant case. The district court had granted the defendant a writ of habeas corpus on the ground that the petitioner was forced to make an unconstitutional choice between not taking the stand at his deferred sentence violation hearing, thereby sacrificing due process rights, or speaking up in his own defense and thereby risking self-incrimination in a subsequent criminal trial based on the same incident. The First Circuit Court of Appeals reversed the grant of the writ of habeas corpus. In holding that neither the petitioner's Fifth Amendment rights nor his right to due process had been violated, the court stated, in *Flint, supra,* 499 F.2d at 103:

"Unlike the defendant in *Simmons,* petitioner was never faced with a choice between raising one constitutional right and foregoing another. The choice whether or not to exercise one's Fifth Amendment right to remain silent must often be made in a setting where there is a concomitant due process right to be heard. Petitioner's decision was, in effect, the same choice he or any other defendant must make when brought to trial. In *Simmons,* the penalty for remaining silent was waiver of a Fourth Amendment claim; in *Palmigiano* the inmate was specifically advised that his silence would be held against him. Here, however, the government had to prove its case by extrinsic evidence and there is no indication that defendant was penalized for silence except to the degree that anyone who claims the privilege may be said to forego the possibility of persuading a court in his favor."

We agree with this reasoning of the First Circuit Court of Appeals in *Flint, supra.*

We conclude that Hass was not unconstitutionally deprived of his constitutional right to testify at the probation revocation hearing, or of his constitutional right against self-incrimination at a subsequent criminal trial regarding the same incident.

In accordance with this opinion, the order of probation revocation and the subsequent imposition of sentence are affirmed.

ERICKSTAD, C. J., and PEDERSON, SAND and VOGEL, JJ., concur.