Deborah **SANDBECK**, Petitioner and Appellee,

v.

Bronson J. **ROCKWELL**, Respondent and Appellant.

Civ. No. 940125.

Supreme Court of North Dakota.

Dec. 2, 1994.

---

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., for petitioner and appellee; argued by Armond G. Erickson.

Bronson J. Rockwell (argued), pro se.

MESCHKE, Justice.

Bronson J. Rockwell appealed a domestic violence order restraining him from contact with Deborah Sandbeck for twelve months. We conclude that the protection order was based on sufficient evidence at a "full hearing" of Sandbeck's motion, when Rockwell failed to timely file an opposing affidavit. We affirm.

Sandbeck applied on April 7, 1994, for domestic violence protection from Rockwell. In her verified application, Sandbeck swore that in January 1994 she moved out of the apartment of her "ex-cohabitating boyfriend" because he mistreated and threatened her. She also attested:

> Two weeks ago he told me he'd kill me if he ever saw me with someone else. He always tells me I'm going to make him want to kill someone. He follows me around and comes to my house and pounds on the door and telephones me at all hours of the night.

Sandbeck described other violent acts by Rockwell while she lived with him. These included sudden angry outbursts, threats to kill her, and times when he choked her "to the point that everything gets real fuzzy and

I nearly pass out." Sandbeck "fear[ed] for [her] safety if he doesn't stay away from me." She sought protection from Rockwell through "absolutely no contact."

Based on this evidence under NDCC chapter 14–07.1, the trial court issued an ex parte protection order. Temporarily, it excluded Rockwell from Sandbeck's dwelling, prohibited all "phone calls, letters, [and] third party, or personal contact" with her, and ordered him to "have absolutely no contact with" her. Complying with directions in NDCC 14–07.1–03(4) to set a "full hearing ... not later than fourteen days from the issuance of the temporary order," the trial court ordered Rockwell to "personally appear and show cause" on April 20, 1994, at 10:00 A.M., "why the relief sought ... should not be granted."

Without an attorney, Rockwell came to the scheduled hearing to contest the order. He did not file an opposing affidavit beforehand. "If you want[ed] evidence presented today, it should have been by affidavit filed before yesterday," the trial court told Rockwell. The court therefore refused to allow Rockwell to offer audio tapes and home videos to show "the kind of woman that she was" and that Sandbeck had been sexually aggressive with him. When Rockwell protested, the court told him, "I'm not going to give you legal advi[c]e."

The trial court allowed Rockwell to cross-examine Sandbeck. Rockwell's questions only developed more details from Sandbeck about times when Rockwell had "[g]rab[bed] my hair," "[f]orce[d] yourself on me," and harassed her at her workplace. The court gave Rockwell added time for argument, and then entered a twelve-month protection order that enjoined Rockwell from contacting, harassing, or threatening Sandbeck.

On this appeal, also without an attorney, Rockwell says that he was "not familiar with both the procedural and substantive laws of the legal system," complains that he "didn't know that he would not have counsel or that

the judge would NOT fairly mediate all evidence brought before him," and argues that "he should ... have been advised of his legal rights to counsel or otherwise allowed to give testimony." Rockwell insists that he did not get a "full hearing." He disputes that Sandbeck " 'SHOWED' in a visible or evidential sense an actual or imminent sign of domestic violence." He asserts that "he can prove beyond a shadow of a doubt in a FULL/FAIR trial that [Sandbeck] was sexually aggressive and initiated most of the sexual encounters." Rockwell requests a new judge, another hearing to present evidence, and a dual protection order to protect him from Sandbeck.

With his reply brief in this court, Rockwell submitted "various enclosures." These included microcassette tapes, videotapes, and other material that he wanted to have considered as evidence.

Sandbeck moved to exclude this material since it was not in the hearing record. See City of Minot v. Freelander, 368 N.W.2d 514, 518 (N.D.1985): "Generally, this Court must decide [an] appeal solely on the evidence produced in the trial court." We granted Sandbeck's motion and returned Rockwell's material, "without prejudice to [Rockwell] to raise the procedural issue on appeal of whether or not he should have had the opportunity to present his evidence to the trial court."

We are not persuaded that Rockwell's opportunity to present evidence at the hearing was inadequate or unfair. We conclude also that Sandbeck's evidence justified the protection ordered.

The scope of a hearing often depends on whether the procedure is an action or a special proceeding. A domestic violence proceeding is described as an "action" in NDCC 14–07.1–02(1), and we said in Steckler v. Steckler, 492 N.W.2d 76, 80 (N.D.1992), it is a civil action for injunctive relief.[1] In

---

1. In Steckler, however, the respondent complied with the rules for evidence on a motion by timely filing an opposing affidavit and resistance to the application for a protection order, before the

*Selland v. Selland,* 494 N.W.2d 367, 368 (N.D.1992), we described a protection order as "a species of injunction" that is final and appealable after a hearing if no other claim remains. The statute, though, makes it clear that a domestic violence proceeding is not a plenary action that requires a full-blown trial. Rather, the statute creates a special summary proceeding and directs a motion hearing noticed by order of the court.

The statute authorizing a stand-alone domestic-violence protection order, NDCC ch. 14–07.1, directs that the procedure begin, not with a summons and complaint as an action would, but with a "verified application" that is simply an affidavit. NDCC 14–07.1–02(1). *See also* NDRCivP 81(a): "Special statutory proceedings ... are excepted from these rules insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules." Under NDRCivP 3, a civil action commences with the service of a summons. On the other hand, "[a]n application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing...."

NDRCivP 7(b)(1). Thus, the special procedure authorized for domestic violence protection in NDCC ch. 14–07.1 is an affidavit application for a short-term order. Thus, in essence, it is a motion with notice by an order to show cause, rather than notice by a summons and complaint for an action.

For a protection order, "[u]pon receipt of the application, the court shall *order a hearing* to be held not later than fourteen days from the date of the hearing order." NDCC 14–07.1–02(2) (emphasis ours). Service of the order for the hearing must be made on the respondent "at least five days prior to the hearing." *Id.* at subsection (3). This is the time for notice of a motion. NDRCivP 6(d). The statute thus directs the faster motion procedure, rather than the usual and longer time to answer an action: "A defendant ... shall serve an answer ... within 20 days after service of the summons...." NDRCivP 12(a). The special procedure for a separate protection order is thus simply one for a short-term order, with notice of the hearing given by an order to show cause.[2]

Commonly, a protection order has been the product of an ancillary, interim motion in a

---

hearing when presentation of further evidence was waived. 492 N.W.2d at 78.

2. The difference between a plenary action and a special proceeding has been described before:
   A clear expression of the distinction between a special proceeding and an ordinary proceeding is stated in *Central Republic Bank & Trust Co. v. Caldwell,* 58 F.2d 721, 731 (8th Cir.1932), as follows:
   "The main characteristic differences between a summary proceeding and a plenary suit are: The former is based upon a petition, and proceeds without formal pleadings; the latter proceeds upon formal pleadings. In the former, the necessary parties are cited in by order to show cause; in the latter, formal summons brings in the parties other than the plaintiff. In the former, short time notice of hearing is fixed by the court; in the latter, time for pleading and hearing is fixed by statute or rule of court. In the former, the hearing is quite generally upon affidavits; in the latter, examination of witnesses is the usual method. In the former, the hearing is sometimes ex parte; in the latter, a full hearing is had."
   *Kee v. Redlin,* 203 N.W.2d 423, 430 (N.D.1972). *See also New Hampshire Fire Ins. Co. v. Scanlon,* 362 U.S. 404, 406–07, 80 S.Ct. 843, 845, 4 L.Ed.2d 826 (1960) (footnotes omitted):
   Supplementing the constitutional, statutory, and common-law requirements for the adjudication of cases or controversies, the Federal Rules of Civil Procedure provide the normal course for beginning, conducting, and determining controversies. Rule 1 directs that the Civil Rules shall govern all suits of a civil nature, with certain exceptions stated in Rule 81 none of which is relevant here. Rule 2 directs that "There shall be one form of action to be known as 'civil action.'" Rule 3 provides that "A civil action is commenced by filing a complaint with the court." Rule 56 sets forth an expeditious motion procedure for summary judgment *in an ordinary, plenary civil action.* Other rules set out in detail the manner, time, form and kinds of process, service, pleadings, objections, defenses, counterclaims and many other important guides and requirements for plenary civil trials. The very purpose of summary rather than plenary trials is to escape some or most of these trial procedures. Summary trials, as is pointed out in the petitioner's brief, may be conducted without formal pleadings, on short notice, without summons and complaints, generally on affidavits, and sometimes even *ex parte.* Such summary trials, it has been said, were practically unknown to the English common law and it may be added that they have had little acceptance in this country. In the absence of express statutory authorization, courts have been extremely reluctant to allow proceedings more

domestic relations action, rather than a separate special proceeding. *See* NDROC 8.2(d). An order to show cause has been the summary procedure, long established, to obtain a short-term injunction in an action. *See* NDCC ch. 32–06. To set a hearing for a temporary injunction, "an order may be made requiring cause to be shown at a specified time and place why the injunction should not be granted, and the defendant in the meantime may be restrained." NDCC 32–06–06 (part). "The application [to vacate or modify a temporary injunction] may be made upon the complaint and the affidavits on which the injunction was granted or upon affidavits on the part of defendant, with or without the answer." NDCC 32–06–09 (part). "Upon the hearing on an application for a restraining order, or on an order to show cause, or on a motion, oral testimony will not be received unless the court shall direct otherwise." NDCC 32–06–11 (part). Not surprisingly, when the Legislature authorized a special proceeding for a separate domestic-violence protection order in NDCC ch. 14–07.1, it adapted this traditional summary method for a temporary injunction by authorizing a hearing upon order of the court.

"An order to show cause is merely a quick way of bringing a motion on for hearing." *Kee v. Redlin*, 203 N.W.2d 423, 431 (N.D. 1972) (Maxwell, Judge, dissenting). Judge Maxwell cited the explanation in *Schillerstrom v. Schillerstrom*, 75 N.D. 667, 32 N.W.2d 106, 111, 2 ALR2d 271, 276 (1948): "In granting an order to show cause, the court looks not at the merits, but at the question whether there is a necessity for a shorter notice" of the motion. *See also First Nat'l Bank & Trust Co. of Fargo v. Krogh*, 70 N.D. 363, 294 N.W. 660, 662 (1940), quoting from *Difani v. Riverside County Oil Co.*, 201 Cal. 210, 256 P. 210, 212 (1927) ("An order to show cause is a notice of motion and a citation to the party to appear at a stated time and place to show cause why a motion

should not be granted."). The order-to-show-cause hearing for a protection order is not a trial; it is simply a motion hearing.

This is emphasized in a Note by the East Central Judicial District in Fargo, following its published Local Rule 1 on "Motions Practice":

> Orders to show Cause are considered to be motions. Ex parte interim relief will be granted conditioned upon a formal motion hearing properly noticed.

North Dakota Century Code, Annotated Court Rules, pp. 911–12 (Michie 1994–95 ed.). This special proceeding for a stand-alone protection order is thus subject to the consistent rules that control how and when evidence is to be presented at a motion hearing.

For a motion "based on facts not appearing of record[,] the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions." NDRCivP 43(e). This is the procedure under the rules for a "full hearing" on a motion. In contrast, for an action, "the testimony of witnesses shall be taken orally in open court, unless otherwise provided by statute or these rules." NDRCivP 43(a). For the special proceeding of a protection order, the trial court is thus authorized under the rules to hear the evidence on affidavits or, as here, partly on affidavits and partly by cross-examination of each affiant.

The rules stress that an opposing affidavit must be filed at least one day before the hearing. "When a motion is supported by affidavit, . . . opposing affidavits may be served not later than one day before the hearing unless the court permits them to be served at some other time." NDRCivP 6(d). "All affidavits, notices and other papers designed to be used upon the hearing of a motion or order to show cause shall be filed at least 24 hours before the hearing unless

summary than the full court trial at common law.

Summary proceedings are often expressly authorized by statute, as NDCC ch. 14–07.1 does. *See* NDRCivP 81(a).

otherwise directed by the court." NDRCivP 5(d)(2). Rockwell did not file an affidavit of his evidence before the hearing within the time that the applicable rules require.

■ A person acting as his own attorney is equally bound by applicable rules of procedure, even if he lacks understanding of those rules or the correct procedures. *Vinje v. Sabot,* 477 N.W.2d 198, 199 (N.D.1991); *Hallock v. Mickels,* 507 N.W.2d 541, 546 (N.D. 1993). Rockwell tried to handle the hearing without the assistance of an attorney. Rockwell's failure to file an opposing affidavit is his own undoing, not an unfair hearing.

An attorney would have been able to present Rockwell's evidence in a timely filed affidavit. Rockwell's failure to do so is not the fault of the judge or the law, and the judge had no duty to explain the procedural rules to him. In plain words, a judge is an umpire, not a coach.

We conclude that Rockwell had the "full hearing" required by the statute and applicable rules for entering a protection order. Of course, the trial court had discretion under the rules to expand the hearing by allowing more evidence or testimony, if persuaded that it was necessary for the particular dispute. *See* NDRCivP 43(e). However, considering the narrow subject of this private dispute between only two people and Rockwell's failure to follow the rules of evidence, the brevity of this hearing was understandable.

■ Rockwell had a full opportunity to present his evidence by a timely filed affidavit, if indeed his material was relevant at all to whether Sandbeck needed protection from him. Rockwell's argument here does not suggest any evidence directly contradicting Sandbeck's sworn testimony of threats and mistreatment. *See* NDREv 103(a): "Error may not be predicated upon a ruling which ... excludes evidence unless a substantial right of the party is affected, and ... *(2) Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Rockwell concentrates on describing Sandbeck's sexual activities, rather than contradicting threats or mistreatment by him. Rockwell is not entitled to a second opportunity when he failed to use the scheduled one because he didn't hire a lawyer and didn't follow the applicable rules. Moreover, under NDCC 14–07.1–02(6), if in fact Rockwell needs protection from Sandbeck, he can seek his own protection order.

■ The person seeking a domestic violence order has the burden of proving the need for protection by a preponderance of the evidence. *Brandt v. Brandt,* 523 N.W.2d 264, 265 (N.D.1994). There must be "a showing of actual or imminent domestic violence." NDCC 14–07.1–02(4). "Domestic violence" includes "the infliction of fear of imminent physical harm." NDCC 14–07.1–01(2). From our earlier summary of Sandbeck's verified application and her sworn testimony, it can be seen that there was satisfactory evidence of domestic violence by Rockwell. The standard for our review of that evidence and of the trial court's findings is given in NDRCivP 52(a): "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

This protection order was not clearly erroneous. We affirm it.

VANDE WALLE, C.J., and LEVINE, J., concur.

NEUMANN, Justice, concurring specially.

I concur in the result. I write separately because I cannot agree that an opportunity to file affidavits the day *before* the respondent is directed to appear and show cause constitutes the "full hearing" mandated by the legislature for this hybrid "action." NDCC § 14–07.1–02(4).

On the other hand, I fully agree with the majority that nothing in Rockwell's argument

suggests the evidence he sought to offer would have contradicted Sandbeck's sworn testimony of threats and mistreatment. Excluding evidence of such doubtful relevance is not reversible error.

SANDSTROM, Justice, dissenting.

We are all concerned about the victims of domestic violence. But their interests can best be served by hearings that are fair to all. Respect for law and human dignity can best be fostered by a process that is fair and just.

Respondents in a domestic violence action have the right to testify and present relevant evidence. Courts can and should restrict the evidence to that which is relevant. Courts should maintain control of the courtroom so the proceedings themselves do not become abusive.

Because the trial court denied the respondent a fair hearing in this case, I dissent.

Section 14–07.1–02(4), N.D.C.C., provides: "Upon a showing of actual or imminent domestic violence, the court may enter a protection order after *due notice* and *full hearing.*" (Emphasis added.)

Bronson Rockwell was served with an Ex Parte Temporary Protection Order requiring him to "personally appear and show cause, before the [District Court for Cass County], at the Cass County Courthouse, Fargo, North Dakota on April 20, 1994, at 10:00 A.M. why the relief sought by the Petitioner in the Application and Affidavit for Protection Order should not be granted." When Rockwell appeared at the time and place specified, he was told he could present no evidence, that he had to have presented his evidence by affidavit the previous day. Nowhere in the order was Rockwell told that he had to present his evidence the day before hearing. Indeed, this was contrary to the explicit language of the order and the explicit statutory requirement of a full hearing. No local court rule provides for the affidavit requirement. This is not the general practice of the courts of this state.

The majority wrongly argues the procedure is permissible under the rules. Even if it was, the court would have to have told him so in the notice.

This Court made clear in *Steckler v. Steckler*, 492 N.W.2d 76 (N.D.1992) that the parties in a domestic violence action have the *right* to present *testimony.*

"Section 14–07.1–02, NDCC provides that after 'due notice and full hearing,' the court may enter a protection order if there is a showing of 'actual or imminent *domestic violence.*' But, at the beginning of the March 4, 1992 hearing, both [parties] stated that they did not wish to present testimony. Thus they waived their right to present testimony. This right is waivable.

"For a waiver to be effective, it must be a voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim or privilege which, except for such waiver, the party would have enjoyed. *Production Credit Ass'n v. Henderson*, 429 N.W.2d 421 (N.D. 1988); *Gajewski v. Bratcher*, 221 N.W.2d 614 (N.D.1974)."

*Steckler* at 78–79. There was no valid waiver here.

The majority claims that under N.D.C.C. § 14–07.1–02, "the procedure is a simplified motion with a limited hearing." The plain language of N.D.C.C. § 14–07.1–02(4), however, requires a "full hearing." The entire analysis of the majority is based on a judicial shell game—its specious claim that a proceeding under N.D.C.C. § 14–07.1–02 is not an action, but a motion. The plain language of N.D.C.C. § 14–07.1–02(1) says the proceeding is an "action," not a motion. N.D.C.C. § 1–02–03 provides: "Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law ... must be construed according to such peculiar and appropriate meaning or definition." "Action" has acquired a specific meaning in the law. This Court in *Steckler v. Steckler*, 492 N.W.2d 76, 80 (N.D.1992), said the proceeding is an action.

Under our statutes, remedies are divided into two classifications: (1) actions, or (2)

special proceedings. N.D.C.C. § 32–01–01. An "action" is "an ordinary proceeding ,in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." N.D.C.C. § 32–01–02. A "special proceeding" is "any remedy other than an action." N.D.C.C. § 32–01–04.

This Court has previously discussed the procedural differences between an action, or an ordinary proceeding, and a special proceeding.

"A clear expression of the distinction between a special proceeding and an ordinary proceeding is stated in *Central Republic Bank & Trust Co. v. Caldwell,* 58 F.2d 721, 731 (8th Cir.1932), as follows:

'The main characteristic differences between a summary proceeding and a plenary suit are: The former is based upon a petition, and proceeds without formal pleadings; the latter proceeds upon formal pleadings. In the former, the necessary parties are cited in by *order to show cause;* in the latter, formal summons brings in the parties other than the plaintiff. In the former, short time notice of hearing is fixed by the court; in the latter, time for pleading and hearing is fixed by statute or rule of court. *In the former, the hearing is quite generally upon affidavits; in the latter, examination of witnesses is the usual method. In the former, the hearing is sometimes ex parte; in the latter, a full hearing is had.'* "

*Kee v. Redlin,* 203 N.W.2d 423, 430 (N.D. 1972) (emphasis added). The distinction is more than mere semantics. An action carries with it the procedural guarantees associated with a full hearing or trial, while a special proceeding, often involving an order to show cause, is less formal and may even be held *ex parte.*

Under N.D.C.C. § 14–07.1–02, upon a showing of actual or imminent domestic violence, the trial court may enter a protection order after "due notice and *full hearing.*"

The majority contends the trial court was statutorily authorized to confine the evidence to affidavits, or to affidavits and cross-examination, because a domestic violence protection order is merely by motion on an order to show cause. The majority then leaps to its analysis under an order to show cause. While an order to show cause may be a way, long-established, to obtain a temporary injunction, *nowhere* in N.D.C.C. § 14–07.1–02 is "order to show cause" mentioned. Further, it is clearly incorrect to "borrow" procedural limitations from N.D.C.C. ch. 32–06, as the Legislature has not incorporated the antiquated injunction statutes into § 14–07.1–02, an "innovative, unique effort to provide an alternative remedy in domestic violence matters." *Lucke v. Lucke,* 300 N.W.2d 231, 233 (N.D.1980). There would be little reason for the Legislature to enact ch. 14–07.1 if it felt ch. 32–06 was adequately dealing with domestic violence. The patchwork of rules and procedural limitations the majority, and apparently lower courts, have attached to domestic violence protection order proceedings are not found in the statute. These limitations denied Rockwell a full and fair hearing.

Because N.D.C.C. § 14–07.1–02 demands due notice and a full hearing, the trial court's denial of Rockwell's evidence requires reversal. Rockwell was denied his fundamental right of due process by the inadequate hearing. Procedural due process requires notice and a meaningful opportunity for a hearing appropriate to the nature of the case. *State v. One Black 1989 Cadillac,* 522 N.W.2d 457, 463 (N.D.1994). Notice must provide with specificity the allegations against the defendant and indicate the circumstances surrounding the alleged violation. *McGuire v. Warden of State Farm,* 229 N.W.2d 211, 218–19 (N.D.1975). Notice must also apprise the defendant of the time and place for hearing. *See State v. Hass,* 264 N.W.2d 464, 467 (N.D. 1978). These requirements ensure the defendant and his or her attorney can adequately prepare for the hearing. *McGuire* at 219. The trial court here notified Rockwell he was to appear and show cause why a

protection order should not issue. Relying upon this notice, Rockwell appeared and prepared to present evidence. Only then did the trial court announce affidavits were to be previously filed to present the evidence at the hearing. The notice given to Rockwell nowhere mentions this requirement. The majority contends the filing of affidavits was inferred because of the nature of the "action." The length of the majority's analysis belies this inference. Were it a simple question, only a simple answer would be necessary. Because Rockwell, acting pro se, did not receive notice specifying the manner in which to respond to the allegations, and which neither he nor any competent lawyer could infer, Rockwell was denied due process.

In argument to the trial court and to this Court, Rockwell contended he neither threatened nor harassed Sandbeck. He contends that when she saw him with his new special friend, Sandbeck out of jealousy filed this action to impugn his reputation. He contends he has specific evidence, including a witness other than himself, to refute Sandbeck's allegations of threats and harassment. He was denied the opportunity to present relevant evidence.

I would reverse the order of the trial judge and remand for the hearing required by law. I would reinstate the temporary protection order issued under N.D.C.C. § 14–07.1–03 for a period not to exceed that provided by the statute.