2001 ND 62

**Jenese A. PETERS–RIEMERS,
Plaintiff and Appellee,**

v.

**Roland C. RIEMERS, Defendant
and Appellant.**

No. 20000145.

Supreme Court of North Dakota.

March 23, 2001.

Rehearing Denied April 17, 2001.

84

Roland C. Riemers, Buxton, ND, defendant and appellant.

Michael A. Birrenkott and Michael L. Gjesdahl (argued) of Gjesdahl & Deitz, PLLP, Fargo, ND, for plaintiff and appellee.

Reid A. Brady, Assistant Attorney General, Bismarck, ND, for amicus curiae.

NEUMANN, Justice.

[¶ 1] Roland C. Riemers appeals a domestic violence protection order restraining him from contact with Jenese A. Peters Riemers. We affirm the protection order.

I

[¶ 2] On March 6, 2000, Peters–Riemers applied for domestic violence protection from Riemers. In her application, Peters–Riemers attested that she and Riemers had been involved in a verbal and physical confrontation on March 4, 2000. She packed a bag and told Riemers she was taking their two-year-old son with her to stay in a hotel. Riemers told her she could not take their son, and the parties began struggling. During the struggle, Peters–Riemers dialed 911, but Riemers held her from the telephone. They struggled until Riemers hit Peters–Riemers in the face, and she fell to the floor. Riemers went to another room, and Peters–Riemers picked up her bag and left the house. As she was leaving, a patrol car drove into the driveway. Peters–Riemers explained she had placed the 911 call. After showing the officers she needed medical attention, she drove herself to a hospital. Peters–

Riemers' injuries included bone fractures, bruising, and swelling around her eye.

[¶ 3] The district court granted Peters–Riemers a temporary domestic violence protection order on the day of her application. A hearing was held on March 14, 2000, to determine whether to issue a permanent protection order. During the hearing, Riemers attempted to testify about alleged previous incidents of abuse by Peters–Riemers and about his state of mind at the time of the March 4, 2000, confrontation. Riemers also attempted to cross-examine Peters–Riemers regarding the alleged incidents of previous abuse. Peters–Riemers objected to both lines of inquiry based on relevance. The district court sustained Peters–Riemers' relevancy objections. After the hearing, the district court issued a one-year protection order against Riemers. Riemers appeals.

## II

[¶ 4] Riemers first argues the district court abused its discretion and violated his due process rights and the due process rights of the parties' son by granting Peters–Riemers' protection order petition without allowing him to present certain testimony.

### A

[¶ 5] Riemers argues the district court abused its discretion by ruling his testimony about alleged previous incidents of abuse by Peters–Riemers and about Riemers' state of mind was irrelevant in deciding whether to grant Peters–Riemers' petition for a domestic violence protection order under N.D.C.C. § 14–07.1–02.

[¶ 6] When asked why he feared for his personal safety at the time of the confrontation, Riemers began testifying about a previous incident involving him and Peters–Riemers. Peters Riemers objected based on relevance. The district court sustained the objection. Riemers' attorney told the court they had offered the testimony to show Riemers' state of mind as it pertained to self-defense. The dis-

trict court reiterated the objection was sustained.

[¶ 7] Relevant evidence is evidence that reasonably and actually tends to prove or disprove any fact in issue. N.D.R.Ev. 401; *Schaefer v. Souris River Telecom.*, 2000 ND 187, ¶ 10, 618 N.W.2d 175. We review a district court's admission or exclusion of evidence based on relevance grounds by applying an abuse of discretion standard. *Schaefer*, at ¶ 10. A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner or when it misinterprets or misapplies the law. *Mellum v. Mellum*, 2000 ND 47, ¶ 21, 607 N.W.2d 580.

[¶ 8] "Domestic violence" is defined in N.D.C.C. § 14–07.1–01(2):

"Domestic violence" includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, *not committed in self-defense*, on the complaining family or household members. (Emphasis added).

Because acts committed in self-defense are statutorily excluded from the definition of domestic violence, testimony about previous incidents of abuse by Peters–Riemers and about Riemers' state of mind was clearly relevant because of its bearing on whether Riemers acted in self-defense. *See Krank v. Krank*, 529 N.W.2d 844, 850 n.2 (N.D.1995) (noting "[s]elf defense would include, where supported by the facts, the battered spouse syndrome"); *see also Lovcik v. Ellingson*, 1997 ND 201, ¶ 16, 569 N.W.2d 697 ("Although past abusive behavior is not dispositive, it is relevant in determining whether domestic violence is actual or imminent."); *Cesare v. Cesare*, 154 N.J. 394, 713 A.2d 390, 395 (1998) ("Because a particular history can greatly affect the context of a domestic violence dispute, trial courts must weigh the entire relationship between the parties

and ... can consider evidence of a defendant's prior abusive acts regardless of whether those acts have been the subject of a domestic violence adjudication.") Accordingly, the district court misapplied the law and abused its discretion in excluding this evidence.

 [¶ 9] Under Rule 103(a), N.D.R.Ev., error may not be predicated upon the erroneous exclusion of evidence unless a substantial right of the party is affected. *State v. Hart,* 1997 ND 188, ¶ 21, 569 N.W.2d 451. *See also* N.D.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). In *Hart,* the defendant argued the trial court abused its discretion in excluding evidence supporting his claim of self-defense. *Id.* at ¶ 18. Hart attempted to testify about a statement allegedly made by an unavailable witness, and the trial court ruled the proffered testimony was hearsay. *Id.* at ¶ 19. Hart offered the statement to show his state of mind. *Id.* at ¶ 20. Hart's self-defense evidence and evidence about his state of mind were admitted in other portions of his testimony. *Id.* at ¶ 21. Accordingly, we held the exclusion of Hart's testimony did not affect Hart's substantial rights and did not require reversal. *Id.* at ¶ 21. We reach the same conclusion here.

 [¶ 10] Riemers was allowed to testify as to his state of mind:

Q At—during this altercation, did you—were you in fear for your personal safety at that point in time?

A Very much so.

When asked why he feared for his personal safety, the court sustained Peters–Riemers' relevancy objection. However, at another point in his testimony, Riemers testified as to alleged previous incidents of abuse by Peters–Riemers:

A At that point she attacked me—

Q In what manner?

A Her usual manner. Starting off with tearing off my shirt, ripping it to pieces—

Q Usual manner? You mean she's done this in the past?

A A number of occasions. She scratched up my chest and face, she would try to kick me in the testicles and the leg or hit me any place she could. And then—

Q And this was happening this evening—that evening in question?

A Yes, it was happening that evening.

Q She attempted to kick you in the testicles?

A Yes, you see—

Q Has she done that before?

A Yes. She's tried to rip them off at times.

Because Riemers was allowed to testify both about alleged previous incidents of abuse by Peters–Riemers and about his state of mind, the district court's error in excluding relevant evidence was not prejudicial and did not affect Riemers' substantial rights. Nonprejudicial mistakes by the district court constitute harmless error and are not grounds for reversal. *Huesers v. Huesers,* 1998 ND 54, ¶ 11, 574 N.W.2d 880.

B

 [¶ 11] Riemers argues the district court violated his and the parties' son's due process rights by denying him the opportunity to cross-examine Peters–Riemers about alleged previous incidents of abuse by Peters–Riemers.

 [¶ 12] In *Sandbeck v. Rockwell,* 524 N.W.2d 846, 848–49 (N.D.1994), a majority of this Court held that the scope of a hearing often depends on whether the procedure is an action or a special proceeding, and that N.D.C.C. § 14–07.1–02(1) makes it clear that a domestic violence proceeding is not a plenary action that requires a full-blown trial. Rather, the statute creates a special summary proceeding and directs a

motion hearing noticed by order of the court. *Sandbeck*, 524 N.W.2d at 849.

 [¶ 13] Under N.D.R.Civ.P. 43(e), for a motion "based on facts not appearing of record[,] the court may hear the matter on affidavits presented by the respective parties, but the court may direct the matter be heard wholly or partly on testimony or depositions." For the summary proceeding of a protection order, the trial court is thus authorized under the rules to hear the evidence on affidavits or partly on affidavits or, as in *Sandbeck*, partly on affidavits and partly by cross-examination of each affiant. 524 N.W.2d at 850.

[¶ 14] On March 6, 2000, Peters–Riemers filed a petition for protective relief and an affidavit supporting her petition. The district court heard the matter on Peters Riemers' affidavit on March 14, 2000. Riemers did not submit an opposing affidavit.[1] At the hearing, the district court, exercising its discretion, allowed the cross-examination of Peters–Riemers as to the contents of her affidavit. Peters Riemers did not present direct testimony in addition to her affidavit testimony. During cross-examination, Riemers' attorney asked Peters–Riemers, "Ever hit [Riemers] in the past?" Peters–Riemers objected based on relevancy. The court sustained Peters–Riemers' relevancy objection.

 [¶ 15] In the previous subsection, we concluded testimony about alleged previous incidents of abuse by Peters Riemers was relevant because of its bearing on whether Riemers acted in self-defense. However, Peters–Riemers' affidavit discusses only the events of the night of the confrontation, March 4, 2000, and an affair Riemers had in Honduras during the parties' marriage. Thus, although Peters–Riemers' testimony about alleged previous incidents of abuse by Peters–Riemers was

relevant, it was beyond the scope of the affidavit. *See* N.D.R.Ev. 611(b) (specifying "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness"). We will not set aside a correct result merely because the trial court assigned an incorrect reason, if the result is the same under the correct law and reasoning. *Mandan Educ. Ass'n v. Mandan Public School Dist. No. 1*, 2000 ND 92, ¶ 8, 610 N.W.2d 64.

[¶ 16] The district court here, exercising its discretion, also allowed Riemers to testify. After Riemers testified, the court asked Riemers' attorney, "Do you have anything further?" Riemers' attorney replied, "I have nothing further, Your Honor." Riemers did not ask the court to allow him to call Peters–Riemers as part of his own case to question her about relevant issues beyond the scope of her affidavit. Had Riemers asked to call Peters–Riemers as an adverse witness to question her about alleged previous incidents of abuse, and had his request been denied after he had already been forbidden to pursue these matters on cross-examination, Riemers would have been denied every possible opportunity to elicit this relevant evidence from Peters–Riemers. *See* N.D.R.Civ.P. 43(b) ("A party may call an adverse party . . . and interrogate the witness by leading questions and contradict and impeach the witness in all respects as if the witness had been called by the adverse party, and the witness thus called may be contradicted and impeached by or on behalf of the adverse party, and may be cross-examined by the adverse party only upon the subject matter of the witness's examination in chief.") That almost certainly would have been an abuse of discretion, but that is not what happened in this case.

---

1. Unlike the respondent in *Sandbeck v. Rockwell*, 524 N.W.2d 846 (N.D.1994), Riemers was permitted to testify even though he had not previously filed an affidavit. The temporary domestic violence protection order

served on Riemers stated he could appear at the hearing on March 14, 2000, to "explain why [Peters–Riemers'] request for a permanent domestic violence protection order should not be granted."

[¶ 17] The district court appropriately controlled the presentation of evidence during Peters–Riemers' case, and Riemers failed to call Peters–Riemers as part of his case. The district court did not ·violate Riemers and the parties' son's due process rights.

### III

[¶ 18] Riemers also makes several other constitutional arguments. He argues the protection order is unconstitutionally vague; the protection order deprives him of his constitutional right to free speech; chapter 14–07.1, N.D.C.C., and sections 14–05–22(3) and 14–09–06.2(1)(j), N.D.C.C., are unconstitutional; and his property was taken in violation of his due process rights.

### A

■■■ [¶ 19] Riemers argues the protection order is unconstitutionally vague. The protection order provides:

> [Riemers] is restrained from coming within 500 yards of [Peters–Riemers'] residence at R.R. 1, Box 43, Buxton, ND, 58218, and restraining [Riemers] from coming within 100 yards of any residence in a town, city or other locality of [Peters Riemers] during the effective period of this Order.

Riemers contends the order subjects him to arrest for unwittingly intruding within 100 yards of some unknown and unknowable residence of Peters–Riemers. Riemers asserts that because the order does not allow him to avoid committing a criminal act, it is unconstitutionally vague.

·[13–16] [¶ 20] A statute, or injunction, is unconstitutionally vague if it " 'either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning· and differ as to its application.' " *Fargo Women's Health Org., Inc. v. Lambs of Christ,* 488 N.W.2d 401, 409 (N.D.1992) (quoting *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). We stated in *Fargo Women's Health,* 488 N.W.2d at 409:

> The purpose of the vagueness doctrine is to ensure that all "be informed as to what the state commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). When so informed, people have an opportunity to conform their conduct to the law, and those who enforce the law are, provided with strict guidelines for their application. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The prohibition against overly vague laws protects people from having to voluntarily curtail First Amendment activities because of a fear those activities could be characterized as illegal activities due to an unconstitutionally vague statute. *Id.*

[¶ 21] Under N.D.C.C. § 14–07.1–13(4), only a willful violation of a protection order results in penalty. A person engages in "willful" conduct if he or she engages in the conduct intentionally, knowingly, or recklessly. N.D.C.C. § 12.1–02–02; *see also* N.D.C.C. § 14–07.1–01(7) (cross-referencing definition of "willfully" in N.D.C.C. § 12.1–02–02). Clearly, the hypothetical situation Riemers presents, in which he unwittingly intrudes within 100 yards of some unknown and unknowable residence of Peters–Riemers, would not constitute willful behavior. Riemers also· asserts he could be subjected to criminal penalties for violating the order even if Peters Riemers initiates contact. Again, Riemers ignores the culpability requirement for a protection order violation. The protection order is sufficiently specific for Riemers to conform his conduct to its strictures and therefore is not unconstitutionally vague.

### B

■■■ [¶ 22] Riemers argues the protection order violates his constitutional right to free speech because it restrains him from having any contact with Peters–Riemers. The restrictions placed on Riemers' speech are authorized by

N.D.C.C. § 14–07.1–02(4)(a), which provides that a protection order may restrain a party from "having contact with any other person."

[¶ 23] In *Allied Mut. Ins. Co. v. Director of N.D. Dep't of Transp.*, 1999 ND 2, ¶ 6, 589 N.W.2d 201 (quoting *Swenson v. Northern Crop Ins., Inc.*, 498 N.W.2d 174, 178 (N.D.1993)), we explained:

> "It is well established that an issue not presented to the trial court will not be considered for the first time on appeal. *Gange v. Clerk of Burleigh County District Court*, 429 N.W.2d 429, 432 n. 3 (N.D.1988). This constraint applies with particular force to a constitutional issue. *Gange*, 429 N.W.2d at 432 n. 3; *State v. Slapnicka*, 376 N.W.2d 33, 36 (N.D. 1985). We therefore decline to address [the constitutional] argument."

[¶ 24] Riemers was served the temporary protection order that included notice of the date set for the hearing. The temporary protection order stated it was authorized by chapter 14–07.1, N.D.C.C., and notified Riemers of his opportunity to explain at the hearing why a permanent domestic violence protection order should not be issued. Riemers had the opportunity to raise his First Amendment argument. Because Riemers failed to raise his constitutional challenge to N.D.C.C. § 14–07.1–02(4)(a) to the district court, he is precluded from raising it on appeal.

### C

[¶ 25] Riemers challenges the constitutionality of chapter 14–07.1, N.D.C.C., and sections 14–05–22(3) and 14–09–06.2(1)(j), N.D.C.C. Because Riemers failed to properly raise these constitutional challenges to the district court, he is precluded from raising them on appeal. *See Allied*, 1999 ND 2, ¶ 6, 589 N.W.2d 201.

### D

[¶ 26] Riemers argues his property was taken in violation of his due process rights because the district court allowed Peters–Riemers to remain in the parties' home without allowing Riemers to testify as to his sole ownership of the property. Due process generally requires a person be given notice and an opportunity to be heard before the government deprives the person of property. *Wahl v. Morton Co. Soc. Serv.*, 1998 ND 48, ¶ 6, 574 N.W.2d 859. However, section 14–07.1–02(7) provides that "[n]o order or agreement under this section affects title to any real property in any matter." Rather, the protection order merely temporarily excludes Riemers from the dwelling the parties share. *See* N.D.C.C. § 14–07.1–02(4)(b). Thus, Riemers has not been deprived of his property, and his due process argument fails.

### IV

[¶ 27] Peters–Riemers argues she is entitled to an award of attorney fees under Rule 38, N.D.R.App.P. According to Peters–Riemers, Riemers is abusing the system by appealing the protection order because Riemers' arguments are frivolous and have been made solely to cause her hardship. While some of Riemers' arguments are "so devoid of merit that he should have been aware of the impossibility of his success on appeal," we cannot say the same about all his assertions. *See Mitchell v. Preusse*, 358 N.W.2d 511, 514 (N.D.1984). Accordingly, we deny the request for costs and attorney fees.

### V

[¶ 28] We affirm the district court's order.

[¶ 29] GERALD W. VANDE WALLE, C.J., and JAMES H. O'KEEFE, S.J.

[¶ 30] The Honorable O'KEEFE, S.J., sitting in place of KAPSNER, J., disqualified.

SANDSTROM, Justice, concurring and dissenting.

[¶ 31] Although I agree with much of the majority opinion, because the district court denied the respondent a fair hearing in this case, I respectfully dissent from parts II(B) and V.

A

[¶ 32] At the hearing on the protection order petition, counsel for Riemers attempted to cross-examine Peters–Riemers regarding the allegations of her petition. The transcript demonstrates counsel apparently sought to elicit evidence about Riemers' state of mind, prior incidents of domestic violence between the parties, and self-defense. Counsel for Peters–Riemers objected at least eight times in the first few minutes of testimony, with most of the objections sustained by the court. The following exchange then took place:

Q [MR. SIMONSON]: Ever hit Roland in the past?

MR. CHAPMAN: Objection, relevancy to this incident.

THE COURT: Sustained.

MR. SIMONSON: Well, Your Honor, looking at an issue of self defense, obviously he would have to consider—

THE COURT: Sustained, counsel.

MR. SIMONSON: I have no further questions, Your Honor.

Notably, and contrary to the majority opinion, the record clearly demonstrates counsel for Peters–Riemers objected based on "relevancy to this incident" rather than on the notion the questions were in essence beyond the scope of the direct testimony of Peters–Riemers' affidavit. Even more importantly, the district court sustained the objection on that basis.

[¶ 33] The majority, at ¶ 8, correctly states that testimony concerning Riemers' state of mind and past incidents of domestic violence was relevant, and that the district court abused its discretion by excluding evidence of past violence by Peters–Riemers and of Riemers' state of mind. The district court's abuse of discretion probably was nonprejudicial relative to Riemers' own testimony, which, though limited, was sufficient. The denial of cross-examination of Peters–Riemers, however, was not harmless error.

B

[¶ 34] The majority, at ¶¶ 12–14, relying on *Sandbeck v. Rockwell*, 524 N.W.2d 846 (N.D.1994), suggests that Peters–Riemers' affidavit, rather than the district court, determines the scope of the hearing. The majority concludes, at ¶ 15, "although Peters–Riemers' testimony about alleged previous incidents of abuse by Peters–Riemers was relevant, it was beyond the scope of the affidavit." Therefore, the majority concludes, at ¶ 16, that Riemers could address the issues of self-defense and his state of mind only by calling Peters–Riemers "as part of his own case to question her about relevant issues beyond the scope of her affidavit." The transcript demonstrates that the hearing began with Riemers' attorney cross-examining Peters–Riemers about the contents of her affidavit. Contrary to the majority's conclusion, simply including or excluding facts from an affidavit does not expand or limit the scope of a protection order hearing.

[¶ 35] In *Sandbeck*, the majority recognized the importance of cross-examination and development of details regarding state of mind and self-defense:

The trial court allowed Rockwell to cross-examine Sandbeck. Rockwell's questions only developed more details from Sandbeck about times when Rockwell had "[g]rab[bed] my hair," "[f]orce[d] yourself on me," and harassed her at her workplace. The court gave Rockwell added time for argument, and then entered a twelve-month protection order that enjoined Rockwell from contacting, harassing, or threatening Sandbeck.

524 N.W.2d at 848. Contrary to the majority's conclusion, the majority in

*Sandbeck* limited evidence "describing Sandbeck's sexual activities, rather than contradicting threats or mistreatment by him." *Id.* at 851. Rockwell attempted to "offer audio tapes and home videos" to show Sandbeck was sexually aggressive. *Id.* at 848. This Court held the district court did not err in disallowing the evidence. Here, unlike the attempted exploration of the petitioner's sexual activities in *Sandbeck,* Riemers attempted to contradict the issues at the heart of Peters–Riemers' affidavit by cross-examining her to establish self-defense and his state of mind. *Sandbeck* does not stand for the proposition for which the majority seeks to employ it. Instead, the proper analysis is whether limitation of cross-examination was harmless error.

[¶ 36] The United States Supreme Court has recognized cross-examination is "the 'greatest legal engine ever invented for the discovery of truth.'" *Lilly v. Virginia,* 527 U.S. 116, 124, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999) (citing *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)).

[¶ 37] This Court has stated: "The right ·[to cross-examine] is absolute and the denial of the right *as to material evidence* is prejudicial error requiring a new trial." *State v. Bartkowski,* 290 N.W.2d 218, 219 (N.D.1980) (citations omitted). The "complete denial of cross-examination" is "constitutional error of the first magnitude." *Id.* (citing *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966)). Not only is this right guaranteed in criminal cases, it is also cognizable in civil cases. *See Knoepfle v. Suko,* 108 N.W.2d 456 (N.D.1961); *see also Millang v. Hahn,* 1998 ND 152, ¶¶ 8–9, 582 N.W.2d 665 (concluding denial of cross-examination in a remedial or punitive sanction contempt hearing is an abuse of discretion).

[¶ 38] The majority agrees testimony regarding previous incidents of abuse and Riemers' state of mind is relevant and erroneously excluded if used to support self-defense. This is exactly the type of "material evidence" that when excluded by a limitation on the right to cross-examine, results in "prejudicial error requiring a new trial." *Bartkowski,* 290 N.W.2d at 219 (citations omitted).

[¶ 39] Cross-examination is a substantial right in searching for the truth. Although the majority, at ¶ 10, concludes the exclusion of evidence through denial of cross-examination "was not prejudicial and did not affect Riemers' substantial rights," I disagree. This Court has held denial of the right to cross-examine "with respect to material evidence is prejudicial error which will require a new trial." *Knoepfle v. Suko,* 108 N.W.2d 456, 463 (N.D.1961) (citation omitted).

[¶ 40] The lack of lucidity in the majority's analysis is striking. A civil litigant is afforded the right to cross-examine. *Id.; see also· Millang,* 1998 ND 152, ¶ 8, 582 N.W.2d 665. Concluding that Riemers was not prejudiced because his own testimony arguably cured any defect, or because he could call Peters–Riemers for further examination after being denied that right on grounds of relevancy, is illogical in light of our recognition of a right to cross-examine with respect to material evidence. Under the majority's analysis, a petitioner's affidavit—instead of the district court—determines the scope of the hearing and the scope and timing of cross-examination. The majority is wrong. *See Lilly,* 527 U.S. at 124, 119 S.Ct. 1887; *Bartkowski,* 290 N.W.2d at 219; *Brookhart,* 384 U.S. at 3, 86 S.Ct. 1245; *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

[¶ 41] The United States Supreme Court stated in *Chambers,* 410 U.S. at 295, 93 S.Ct. 1038:

The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the "accuracy of the truth-determining process." *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970);

*Bruton v. United States,* 391 U.S. 123, 135–137, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *It is, indeed, "an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *E.g., Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). *But its denial or significant diminution calls into question the ultimate " 'integrity of the fact-finding process' " and requires that the competing interest be closely examined. Berger v. California,* 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

(Emphasis added). Nowhere does the majority identify any "competing interest," much less closely examine one.

[¶ 42] Contrary to the majority's assertion, in ¶ 15, that the district court reached the right result but in the wrong manner, "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The standard enunciated in *Van Arsdall* is fatal to the majority's result. In this case, if "the damaging potential of the cross-examination were fully realized," self-defense would have been established and no protection order would have been issued.

[¶ 43] Relying on *Van Arsdall,* in *Olden v. Kentucky,* 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988), the United States Supreme Court held a denial of the right to confrontation was not harmless beyond a reasonable doubt. At trial, the defense attempted to cross-examine Matthews, the alleged victim, about allegations she was living with Russell. *Id.* at 229–30,

109 S.Ct. 480. The court denied the cross-examination. Addressing this issue, the United States Supreme Court stated:

> Here, Matthews' testimony was central, indeed crucial, to the prosecution's case. Her story, which was directly contradicted by that of petitioner and Harris, was corroborated only by the largely derivative testimony of Russell, whose impartiality would also have been somewhat impugned by revelation of his relationship with Matthews.
>
> . . . .
>
> In sum, considering the relevant *Van Arsdall* factors within the context of this case, we find it impossible to conclude "beyond a reasonable doubt" that the restriction on petitioner's right to confrontation was harmless.

*Id.* at 233, 109 S.Ct. 480.

[¶ 44] Here, like in *Olden,* Peters–Riemers' testimony was "central, indeed crucial," to the district court's determination of whether to issue a protection order. *Id.* Peters–Riemers' testimony "was directly contradicted by that of" Riemers, and no other witness was offered to substantiate Peters–Riemers' allegations. Like in *Olden,* it is "impossible to conclude 'beyond a reasonable doubt' that the restriction" on Riemers' right to cross-examine was harmless.

[¶ 45] None of the cases relied on by the majority stand for the proposition that a party present in court can be denied the right to cross-examine a witness present in court as to material evidence on relevant matters. Indeed, such a denial was the basis for the reversal of conviction in *Chambers v. Mississippi,* and the standard enunciated in *Van Arsdall* requires reversal. Further, the majority cites no case to support its proposition that the scope of the affidavit is exceeded and therefore cross-examination can be denied to a party cross-examining a petitioner about mat-

ters, such as self-defense, that lie at the heart of a protection-order affidavit.

### C

[¶ 46] Domestic violence is intolerable. *Huesers v. Huesers*, 1997 ND 33, ¶ 20, 560 N.W.2d 219 (Sandstrom, J., dissenting). There was evidence that both parties engaged in domestic violence. A protection order may well be necessary. But the denial of Riemers' right to cross-examine substantially limited the ability of the district court to determine the truth. I would reverse and remand because Riemers was denied due process by the district court's denial of his right to cross-examine with respect to a significant issue. *Knoepfle*, 108 N.W.2d at 463.

[¶ 47] As I wrote in *Sandbeck v. Rockwell:*

> We are all concerned about the victims of domestic violence. But their interests can best be served by hearings that are fair to all. Respect for law and human dignity can best be fostered by a process that is fair and just.
>
> Respondents in a domestic violence action have the right to testify and present relevant evidence. Courts can and should restrict the evidence to that which is relevant. Courts should maintain control of the courtroom so the proceedings themselves do not become abusive.

524 N.W.2d 846, 852 (N.D.1994) (Sandstrom, J., dissenting). Parties are also entitled to the reasonable opportunity to cross-examine adverse witnesses.

[¶ 48] By denying fundamental fairness, the majority does violence to our system of justice, and engenders disrespect for courts and the law.

[¶ 49] Dale V. Sandstrom

---

2. Although Riemers' counsel did not make an offer of proof, one can tell from the context of the question what evidence he was seeking to introduce. Rule 103(2), N.D.R.Ev. I would, however, encourage counsel to make offers of

MARING, Justice, concurring and dissenting.

[¶ 50] I agree with parts I, III, and IV of the majority opinion. I respectfully disagree with parts II and V.

[¶ 51] I agree procedurally Riemers was in error when he attempted on cross-examination of Peters–Riemers to inquire whether she had hit him on prior occasions. Rule 611(b), N.D.R.Ev., states, "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Clearly, Riemers' cross-examination was beyond the scope of direct. Rule 611(b), N.D.R.Ev., however, also states, "[t]he court, in the exercise of discretion, may permit inquiry into additional matters as if on direct examination."

[¶ 52] Riemers' attorney asked Peters–Riemers "Ever hit Roland in the past?" Peters–Riemers' attorney objected on relevancy, and the court sustained the objection. At this point, there was nothing to indicate to the court this evidence was relevant. Riemers' attorney, however, then advised the trial court Riemers was raising the issue of self-defense.[2] I agree with the majority that the trial court abused its discretion when it failed to permit Riemers' attorney to present evidence on the relevant issue of self-defense.

[¶ 53] I disagree with the majority that Riemers should have called Peters–Riemers as an adverse party in his own case after the trial court sustained the objection on relevancy grounds. This evidence would not have been any more "relevant" at that point in the proceeding and, in my opinion, counsel would have exposed himself to sanctions for attempting to present evidence he was instructed was not relevant to any issue in the case. Had Peters–Riemers' attorney made the proper objection Riemers would have had an opportunity to cure his procedural error by present-

proof in order to give the trial court an opportunity to make intelligent rulings and so as not to leave this court with such a bare bones record to review on appeal.

ing the testimony in his case.[3]

[¶ 54] In exercising its discretion, however, the trial court should keep in mind an application for a domestic violence protection order is a civil action in the nature of an application for injunctive relief. *Steckler v. Steckler,* 492 N.W.2d 76, 80 (N.D.1992). It is not a plenary action that requires a full-blown trial. *Sandbeck v. Rockwell,* 524 N.W.2d 846, 849 (N.D. 1994). The purpose of a civil protection order is to prevent domestic violence in the future. *See* Catherine F. Klein & Leslye E. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law,* 21 Hofstra L.Rev. 801, 810–11 (1993). This is not a criminal action. Although our legislature has said self-defense can be raised in this civil action, a trial judge "shall exercise reasonable control over the mode ... of interrogating witnesses ... so as to ... (3) protect witnesses from harassment or undue embarrassment." Rule 611(a), N.D.R.Ev. Trial courts must be ever vigilant not to permit the revictimization of victims of domestic violence in these cases. Judges handling domestic violence

actions must look carefully to determine whether there is a primary aggressor in a violent relationship, whether one party uses violence by the other party as a justification for his own violence, or whether one party's violence is in fact self-defense. Klein & Orloff, *supra* at 1076.

[¶ 55] Here the trial court did not allow any examination of Peters–Riemers on the issue of her past violence with Riemers. I disagree with the majority that this was nonprejudicial. Our Court has held it is prejudicial error requiring a new trial to deny cross-examination with respect to material evidence. *Knoepfle v. Suko,* 108 N.W.2d 456, 463 (N.D.1961). I, therefore, would reverse and remand for a new hearing on the application for a protection order.

[¶ 56] Mary Muehlen Maring

---

3. Somewhat analogous are objections to foundation that are not sufficiently specific to afford the other party an opportunity to cure by further testimony. *Collom v. Pierson,* 411 N.W.2d 92, 95 (N.D.1987). Here, too, had

the proper objection been made counsel's error could have been cured.